# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ASSET 42302 LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA, and UNITED STATES POSTAL SERVICE,<br><br>Defendants. | Civil Action. No. 03-287C<br>Hon. Susan B. Braden<br><br>**THIRD AMENDED COMPLAINT** |

Plaintiff ASSET 42302 LLC ("Plaintiff"), by its attorneys, Rosenberg Calica & Birney LLP, as and for its third amended and supplemental complaint, alleges as follows:

**Parties**

1. Plaintiff is a Limited Liability company organized under the laws of the state of New York.

2. The United States Postal Service ("the Postal Service") is an independent establishment of the executive branch of the United States of America.

**Jurisdiction**

3. By letter dated June 13, 2002, Plaintiff submitted a claim to the Postal Service contracting officer seeking payment property damages in the amount of $59,211.70, plus use and occupation against the Postal Service as a holdover.

4. By letter dated July 25, 2002, the Postal Service denied the claim.

5. By letter dated October 19, 2006, Plaintiff supplemented its claim for property damages to $195,906.76, for a total claim of $204,823.76 (including use and occupation). The supplemental claim is based on the same transactions and occurrences as in the original claim

and merely reflects a change in legal theory.

6. By letter dated January 5, 2007, the Postal Service denied Plaintiffs' supplemental claim.

7. The claims are therefore within the jurisdiction of this Court pursuant to 28 U.S.C. § 1491, and 41 U.S.C. § 601, et seq.

**Factual Allegations**

8. In April, 1997, plaintiff acquired legal title to certain premises and commercial building located at 20548 Fenkell Road, Detroit, Michigan (the "Premises"). At the time plaintiff acquired title to the Premises, the Premises had been leased by the prior owner, First Lawrence Partnership, to the Postal Service by lease dated June 27, 1991 (the "Lease").

9. The Lease contained a 10 year term beginning on September 1, 1991, and ending on August 31, 2001. The stipulated annual rent was $51,625 and, pursuant to paragraph 28, the Postal Service agreed to reimburse the landlord for all property taxes due to the local municipalities. Also, pursuant to paragraph 10 of the Lease, the Postal Service reserved the right to terminate the Lease at any time after the first year of the term upon one year's prior notice to the landlord. While leased to the Postal Service, the Premises was commonly known as the "Brightmoor Station".

10. On November 1, 2000, the Postal Service advised plaintiff of its intent to terminate the Lease and vacate the Premises on less than one year's notice in violation of the one year notice required under paragraph 10. By giving notice on November 1, 2000, the Postal Service became contractually obligated under the Lease to pay rent through August 31, 2001 (the end of the lease term) at the annual rent of $51,625, plus municipal taxes.

11. On December 4 and December 14, 2000, the plaintiff and Postal Service respectively agreed to settle plaintiff's claim for rent arising from the Postal Service's failure to give one year's notice of its intent to vacate, which was deemed effective as of November 30, 2000 (the "December 2000 Settlement Agreement").

12. As set forth therein, the parties agreed to terminate the Lease effective November 30, 2000, and specifically waived and settled plaintiffs' claims for "rents due" and "restoration" of the Premises. The relevant portions of the December 2000 Settlement Agreement state as follows:

> 4. The parties have mutually agreed to terminate the lease for the Brightmoor Station, Detroit Michigan facility effective November 30, 2000.
>
> 5. The parties subsequently entered into negotiations designed to resolve amicably any claims for rents due in accordance with the termination for the lease mentioned in paragraph 4 above. J. Leonard Spodek acting for Asset 42302 LLC offered to settle the claim [for rents] and enter into this agreement terminating the lease for the Brightmoor Station, Detroit, Michigan property in exchange for payment by the USPS in the amount of $37,141.29 (inclusive of all interest) plus taxes due for the period of occupancy with each party to bear its own costs, attorneys fees and expenses. *As part of this settlement, Mr. Spodek and Asset 42302 LLC agree that they will not file or pursue any claim for restoration, monetary or otherwise, on Brightmoor Station, Detroit Michigan property.* Mr. Spodek's offer was accepted on behalf of the USPS.
>
> 6. Upon satisfaction of the terms set forth in paragraph 5, Mr. Spodek and Asset 42302 LLC releases, waives, and abandons all claims against the United States and The USPS, their officers, agents and employees, arising out of or related to the claims referred to in paragraph 4 and or to the termination of the lease, *including any restoration claim*, on the Brightmoor Station . . ."

13. The Postal Service remained in possession of the Premises beyond the termination of the Lease on November 30, 2000, and did not surrender the Premises until the middle of January, 2001.

14. On December 26, 2000, Joseph Nathanson, a principal of the plaintiff, traveled to

Detroit for the specific purpose of accepting the surrender of the Premises. The Postmaster at the new Post Office facility (located across the street) told Mr. Nathanson that the Postal Service had not fully moved out of the former post office, and he was not authorized to surrender possession.

15. Mr. Nathanson borrowed the keys from the Postmaster and inspected the Premises in the ordinary course of business. His inspection showed that the boiler was not operating and that a pipe had frozen and burst causing extensive property damages from interior flooding measuring between 1 and 3 inches deep. Mr. Nathanson then returned the keys to the Postmaster. Upon information and belief, the date of loss was December 20, 2000.

16. After plaintiff advised the Postal Service of the substantial property damages caused by flooding, the parties entered into a superceding settlement agreement dated January 8, 2001 (the “January 2001 Settlement Agreement”). The January 2001 Settlement Agreement is identical to the December 2000 Settlement Agreement in every respect except that the waiver and release language relating to plaintiff’s “restoration” claims was specifically removed, thus evidencing a clear intent to reinstate plaintiff’s right to make such claims. In the course of negotiating the January 2001 Settlement Agreement, the Postal Service admitted it was responsible for property damages.

17. Paragraphs 4, 5 and 6 of the January 2001 Settlement Agreement were edited as follows:

> 4. The parties have mutually agreed to terminate the lease for the Brightmoor Station, Detroit Michigan facility effective November 30, 2000.
>
> 5. The parties subsequently entered into negotiations designed to resolve amicably any claims for rents due in accordance with the termination for the lease mentioned in paragraph 4 above. J. Leonard Spodek acting for Asset 42302 LLC offered to settle the

> claim [for rents] and enter into this agreement terminating the lease for the Brightmoor Station, Detroit, Michigan property in exchange for payment by the USPS in the amount of $37,141.29 (inclusive of all interest) plus taxes due for the period of occupancy with each party to bear its own costs, attorneys fees and expenses. ~~*As part of this settlement, Mr. Spodek and Asset 42302 LLC agree that they will not file or pursue any claim for restoration, monetary or otherwise, on Brightmoor Station, Detroit Michigan property.*~~ Mr. Spodek's offer was accepted on behalf of the USPS.
>
> 6. Upon satisfaction of the terms set forth in paragraph 5, Mr. Spodek and Asset 42302 LLC releases, waives, and abandons all claims against the United States and The USPS, their officers, agents and employees, arising out of or related to the claims referred to in paragraph 4 and or to the termination of the lease, ~~*including any restoration claim,*~~ on the Brightmoor Station . . ."

18. Thus, after the superceding January 2001 Settlement Agreement, the only claims settled and released by plaintiff are claims relating to the unpaid rent and taxes due for the balance of the one year notice period. Plaintiff's "restoration" claims were specifically intended to be reinstated. The Postal Service subsequently paid to plaintiff $37,141.29 due under the settlement agreements in satisfaction of plaintiff's rent claim only.

19. Plaintiff submitted a property damage insurance claim to its insurance carrier, Memphis Insurance Group. The total cost of repairs was conservatively calculated by the insurance carrier to be $195,906.76. Plaintiff's insurance carrier paid $136,695.06, leaving an unrecovered loss of at least $59,211.70.

20. The language of paragraph 6 in the January 2001 Settlement Agreement is specifically limited to claims arising under paragraph 4 thereof relating to rents due by reason of the early termination of the Lease. Because the waiver and release of the "restoration" claims referred to in the December 2000 Settlement Agreement were stricken and removed in the superceding January 2001 Settlement Agreement, the parties demonstrated an objective intent to revive those claims and limit the waiver and release to only claims for "rent".

21. Furthermore, even if the December 2000 Settlement agreement governed, the December 4, 2000 release and waiver of restoration would have had no legal impact on plaintiff's right to recover for waste or property damages on a claim subsequently accruing on December 20, 2000.

**FIRST CAUSE OF ACTION**
(Breach of Contract)

22. Plaintiff incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

23. During its tenancy under the written Lease, the Postal Service had an express contractual obligation to maintain the premises and repair damages to the Premises caused by the Postal Service's gross negligence.

24. The Postal Service negligently or intentionally breached this obligation by failing to ensure that the boiler remained functional during the winter months when the Postal Service should have known that its failure to maintain the boiler would cause a pipe to freeze and burst.

25. The Postal Service's failure to maintain the boiler actually caused a pipe to freeze and burst, thereby causing substantial water damage to the Premises. The Postal Service should have foreseen that a pipe would freeze and burst if the boiler was not maintained during the winter months.

26. As a result, the Postal Service breached the Lease and is liable for property damages at the Premises in the amount of at least $195,906.76.

**SECOND CAUSE OF ACTION**
(Waste)

27. Plaintiff incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

28. As a result of the foregoing, the Postal Service committed common law waste.

29. As a result the Postal Service is liable to plaintiff for property damages in the amount of at least $195,906.76.

**THIRD CAUSE OF ACTION**
(Use and Occupation)

30. Plaintiff incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

31. Pursuant to both the December 2000 Settlement Agreement and the January 2001 Settlement Agreement, the Postal Service stipulated to end the Lease term on November 30, 2000.

32. The Postal Service held over, failed to surrender possession or the keys to the Premises by November 30, 2000 (or within a reasonable time thereafter), and remained in possession until mid-January, 2001.

33. By reason of the Postal Service's illegal holding over, the Postal Service is liable to Plaintiff for use and occupation for the months of December, 2000 and January 2001.

34. Based on the monthly rent of $4,300 plus approximately $150 in taxes actually paid by the Postal Service for the Premises under the Lease, the reasonable value of the Postal Service's use and occupation of the Premises for December, 2000 and January, 2001, is $8,917.

**FOURTH CAUSE OF ACTION**
(Attorneys' Fees)

35. Plaintiff incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

36. The Postal Service's refusal to pay for property damages negligently caused by its failure to maintain boiler operations is not "substantially justified" based on its specious allegations of a general release, especially where, as here, "restoration" claims were specifically revived in the January 2001 Settlement Agreement.

37. As a result of the Postal Service's unjustifiable legal position, plaintiff is entitled to reasonable attorneys' fees and costs pursuant to 28 U.S.C. §2412(d).

**PRAYER FOR RELIEF**

WHEREFORE Asset 42302 LLC demands judgment as follows against defendants United States of America and the United States Postal Service:

a. Upon the first and second causes of action, the sum of at least $195,906.76, plus statutory interest and costs;

b. Upon the third cause of action, the sum $8,917 plus statutory interest and costs;

c. Upon the fourth cause of action, reasonable attorneys fees and costs pursuant to 28 U.S.C. §2412(d); and

d. Such other and further relief as the court deems just and proper.

Dated: Garden City, New York
January 22, 2007

ROSENBERG CALICA & BIRNEY LLP

By: ________/s/_________________________
Robert M. Calica
Robert J. Howard
Attorneys for Plaintiff
100 Garden City Plaza, Suite 408
Garden City, N.Y. 11530
(516) 747-7400

TO: CLERK OF THE COURT

PETER D. KEISLER
Assistant Attorney General
c/o
MICHAEL FRANCIS KEILY
Civil Practice Section
Law Department
475 L'Enfant Plaza, S.W., Room 6327
Washington, D.C. 20260-1127