IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ASSET 42302 LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-287C** |
| | ) | **(Judge Braden)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

THOMAS J. MARSHALL
Managing Counsel
Civil Practice Section
United States Postal Service

MICHAEL FRANCIS KIELY
Civil Practice Section
Law Department
United States Postal Service
475 L'Enfant Plaza, S.W.
Room 6327
Washington, D.C. 20260-1127
(202) 268-4037

Date: March 19, 2007

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . iii

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT . . . . . 1

DEFENDANT'S BRIEF . . . . . 1

STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 2

I. Nature Of The Case And The Course Of Proceedings . . . . . 2

II. Statement Of Facts . . . . . 3

ARGUMENT . . . . . 6

1. Standard Of Review . . . . . 6

2. The Postal Service Is Not Responsible For The Damage To The Premises Because It Was Not A Holdover Tenant As Of December 20, 2000 . . . . . 8

A. A Tenant's Failure To Return Keys Does Not Constitute A Holdover . . . 9

B The Postal Service Had Vacated The Premises Before The Damage Occurred On December 20, 2000. . . . . . 11

3. Plaintiff Is Not Entitled To Claim The Depreciated Amount Of $59,211.70 . . . 12

4. Plaintiff Is Not Entitled To Claim From The Postal Service The Repair Cost Of $136,695.06 Because It Is Not Suing For The Use And Benefit Of Its Insurer . . . . . 12

CONCLUSION . . . . . 12

# TABLE OF AUTHORITIES

## CASES

Case — Page

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) . . . . . . . . 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . 7

*Consumers Distributing Co., Ltd. v. Herman*, 812 P.2d 1274 (Nev. 1991) . . . . . . . . 9

*Container Co. v. United States*, 116 Ct. Cl. 706 (1950) . . . . . . . . 12

*Ernst v. Holzner*, 130 N.Y.S. 442 (N.Y. Sup. App. 1911) . . . . . . . . 9

*Four "S" Alliance, Inc. v. American National Bank & Trust Co. of Chicago*, 432 N.E.2d 1213 (Ill. App. 1982) . . . . . . . . 10

*Grisaffi v. Dillard Dept. Stores*, 43 F.3d 982 (5th Cir. 1995) . . . . . . . . 9

*Guidry v. Gary Cove*, 525 So.2d 569 (La. App. 1988) . . . . . . . . 10

*H.F. Allen Orchards v. United States*, 749 F.2d 1571 (Fed. Cir. 1984) . . . . . . . . 7

*J. Leonard Spodek, Nationwide Postal Management*, PSBCA No. 4323, 00-2 BCA ¶ 31,036 (July 27, 2000) . . . . . . . . 9, 10

*J. Leonard Spodek, Nationwide Postal Management*, PSBCA No. 4265, 00-1 BCA ¶ 30,670 (Nov. 30, 1999) . . . . . . . . 9, 10

*Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158 (Fed. Cir. 1985) . . . . . . . . 7

*Lockheed Martin Corp. v. United States*, 49 Fed. Cl. 241 (2001) . . . . . . . . 8

*Magnolia Star LLC*, PSBCA Nos. 5310, 5337, 2006 PSBCA LEXIS 20 (Dec. 11, 2006) . . . . . . . . 9

*Morton Realty Co. v. Magnolia Warehouses*,
125 S.E.2d 102 (Ga. App. 1962) . . . . . . . . . . 9

*National Construction Co.*,
PSBCA Nos. 3902, 3929, 99-2 BCA ¶ 30,509 . . . . . . . . . . 9

*North Slope Technical v. United States*, 27 Fed. Cl. 425 (1992) . . . . . . . . . . 12

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 7

*T.W. Cole*, PSBCA No. 3076, 92-3 BCA ¶ 25,091 (May 13, 1992) . . . . . . . . . . 9

*Wolff v. Manville Forest Products Corp.*,
486 So.2d 1085 (La. App. 1986) . . . . . . . . . . 9

RULES and REGULATIONS

RCFC 56 . . . . . . . . . . 1, 6, 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ASSET 42302 LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-287C** |
| | ) | |
| | ) | **(Judge Braden)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(h) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully opposes plaintiff's motion for summary judgment and requests that the Court grant summary judgment in defendant's favor. There are no genuine issues of material fact regarding the dispositive factual issues in this case and, accordingly, defendant is entitled to judgment as a matter of law. In support of this opposition and cross-motion, we rely upon the third amended complaint ("Am. Comp."), plaintiff's motion for summary judgment ("PMSJ"), plaintiff's proposed findings of uncontroverted fact ("PPF"), defendant's proposed revisions of certain of plaintiff's proposed findings of uncontroverted fact ("DPR"), defendant's proposed findings of uncontroverted fact ("DPF"), and the following brief.

**STATEMENT OF THE ISSUES**

1. Whether the United States Postal Service was a holdover tenant in the leased premises at the time of the damage to the leased premises on or about December 20, 2000;

2. If the United States Postal Service was a holdover tenant as of December 20, 2000, and caused the damage to the leased premises, whether plaintiff can claim from defendant the $59,211.70 identified by plaintiff's insurance company as the depreciation of plaintiff's

damaged property; and

3. If the United States Postal Service was a holdover tenant as of December 20, 2000, and caused the damage to the leased premises, whether plaintiff can claim from defendant the $136,695.06 that plaintiff received from its insurer for the damage when plaintiff is not prosecuting this action for the use and benefit of the insurer.

## STATEMENT OF THE CASE

### I. Nature Of The Case And The Course Of Proceedings

This action consists of a claim by the plaintiff arising from a lease for real property in Detroit, Michigan, between the plaintiff and defendant, acting through the United States Postal Service. The lease, whose original term was for ten years, September 1, 1991, through August 31, 2001, was terminated as of November 30, 2000, by mutual agreement of the parties. Approximately three weeks after the lease had expired, plaintiff's property suffered extensive damage from a ruptured water pipe, which was discovered by plaintiff on December 26, 2000. Plaintiff filed an insurance claim, which resulted in a payment to it of the cost to repair the damage minus depreciation. On June 13, 2002, plaintiff submitted a claim to the Postal Service, consisting of $59,211.70 for the depreciation as well as other lesser sums such as rent and taxes for an alleged holdover period. The Postal Service contracting officer denied this claim in its entirety on July 25, 2002.

On February 10, 2003, plaintiff filed its original complaint in this action. Plaintiff filed an amended complaint on June 30, 2003, that defendant answered on July 29, 2003. On October 19, 2004, plaintiff filed a motion for summary judgment. Defendant opposed this motion on April 1, 2005. On June 22, 2005, the Court issued an unpublished memorandum opinion and

order that granted plaintiff leave to file a second amended complaint and to amend its earlier motion for summary judgment by September 1, 2005. On October 24, 2005, plaintiff substituted its counsel, and the second amended complaint was filed on December 16, 2005, which defendant answered on January 17, 2006.

On or about October 19, 2006, plaintiff submitted a certified claim to the contracting officer in which it sought for the first time that portion of the cost for repairs that it had received from its insurer, *i.e.*, $136,695.06. Plaintiff had not included this amount in its earlier claim and complaints. On or about October 26, 2006, plaintiff filed a revised motion for summary judgment. This motion included the $136,695.06 along with the other amounts previously sought.

In late October 2006, the parties agreed to a stay in proceedings to allow the contracting officer an opportunity to consider the new claim. The contracting officer issued a final decision on the certified claim on January 5, 2007, in which he denied the claim in its entirety. On January 22, 2007, plaintiff filed its third amended complaint, which defendant answered on February 7, 2007. On February 16, 2007, plaintiff renewed its motion for summary judgment.

## II. Statement Of Facts

In April, 1997, plaintiff acquired legal title to the commercial building located at 20548 Fenkell Road, Detroit, Michigan (the "Premises" or "Brightmoor Station"). PPF 1. At that time, the United States Postal Service ("Postal Service") was leasing the premises for use as a post office. PPF 2. The lease contained a ten-year term beginning on September 1, 1991, and ending on August 31, 2001. PPF 3. The stipulated annual rent was $51,625, and the Postal Service was also responsible to pay property taxes due to the local municipality. *Id.*

In September 1999, the Postal Service moved its operations from the old Brightmoor Station post office into a new post office located at 20615 Fenkell Road, just across the street. DPF 1. In making this move, the Postal Service moved all of its equipment out of the Premises. *Id.*

On or about November 1, 2000, the Postal Service advised plaintiff of its intent to terminate the lease. DPR 4. Therefore, on or about December 4, 2000, plaintiff and the Postal Service respectively agreed to settle plaintiff's claim for rent due under the balance of the lease term, and stipulated to terminate the Lease as of November 30, 2000 (the "December 2000 Settlement Agreement"). PPF 5. In consideration for surrendering the Premises and payment of a stipulated sum, *i.e.*, $37,141.29, plaintiff agreed to waive and release the Postal Service from any further claims under the lease, including claims for "restoration" of the Premises. DPR 5. The Postal Service paid plaintiff the $37,141.29 in 2001. PPF 13.

The December 2000 Settlement Agreement did not contain any provision regarding how or when the Postal Service was to return to plaintiff the keys to the Premises, DPF 2, nor did it contain any provision requiring the Postal Service to maintain the Premises after November 30, 2000, the date by which the Postal Service was to have moved out of the Premises, DPF 3.

Following execution of the December 2000 Settlement Agreement, no representative of the plaintiff traveled to Brightmoor Station to reclaim the Premises prior to December 26, 2000. DPF 5. Therefore, following execution of the December 2000 Settlement Agreement, no representative of the plaintiff performed an inspection of the Premises prior to December 26, 2000. DPF 6.

The damage to the Premises that is the subject of this action occurred on or about

December 20, 2000, 20 days after the stipulated end of the Postal Service's occupancy of the Premises. DPF 4.

On or about December 26, 2000, Joseph Nathanson, a principal of the Plaintiff, traveled to Detroit for the specific purpose of accepting the surrender from the Brightmoor Postmaster. DPR 6. However, plaintiff can not identify which Postal Service official, if any, it contacted to coordinate the visit of Mr. Nathanson to the Premises on December 26, 2000. DPF 7. The postmaster at the Brightmoor Post Office on December 26, 2000, was a woman, Janice Giles. DPF 12.

The Postal Service lent Mr. Nathanson the keys to the Premises, and permitted him to perform an inspection of the Premises. PPF 7. Mr. Nathanson's inspection showed that the Postal Service was no longer using the Brightmoor Station as a postal facility and it was unoccupied. *Id.* His inspection also showed that the hot water boiler was not operating, that the interior was unheated, that a copper pipe had frozen and burst, and that there was extensive ice and flooding within the Premises measuring approximately 1 to 3 inches deep. *Id.* Mr. Nathanson prepared a contemporaneous report of his inspection that included photographs of the Premises. *Id.* However, the inspection report prepared by Joseph Nathanson, dated December 26, 2000, does not mention the presence of any Postal Service equipment on the Premises as of December 26, 2000. DPF 8. Likewise, the photographs of the Premises taken by Joseph Nathanson on December 26, 2000, do not show the presence of any Postal Service equipment on the Premises as of that day. DPF 9.

After plaintiff advised the Postal Service of the substantial property damages caused by the Postal Service's alleged failure to maintain the boiler as required by Paragraph 29 of the

lease, and the resulting frozen pipe and flooding, the parties entered into a superseding settlement agreement dated January 8, 2001 (the "January 2001 Settlement Agreement"). DPR 10. Paragraph 2 of the January 2001 Settlement Agreement reiterated that the Postal Service's lease for the Premises expired on November 30, 2000. PPF 10. The January 2001 Settlement Agreement contained the same settlement amount as the December 2000 Settlement Agreement did, *i.e.*, $37,141.29. PPF 13. The Postal Service paid this amount to plaintiff in 2001. PPF 13.

Subsequently, plaintiff submitted a property damage insurance claim to its insurance agent Memphis Insurance Group ("Memphis Insurance"). PPF 14. Memphis Insurance retained the engineering services of GAB Robins, a nationally known insurance adjuster. PPF 15. GAB Robins calculated the total cost of repairs to be $195,906.76, and the actual cash value (ACV - calculated to be the total cost of repair less depreciation) to be $137,695.08. *Id.*

Plaintiff subsequently received a check from its insurer, in the amount of $136,695.08. DPF 13. However, plaintiff did not use this money to make any repairs to the Premises. *Id.* In bringing this action, plaintiff is not suing the United States for the use and benefit of its insurer. DPF 13.

## ARGUMENT

### 1. Standard Of Review

The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). The moving party has the burden of establishing the absence of disputed genuine issues of material fact and its entitlement to judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. RCFC 56(e).

A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Any evidence presented by the nonmovant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed. Cir. 1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed. Cir. 1984).

A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. It is not appropriate for this Court to grant summary judgment where there are "unexplained gaps" in the movant's evidence, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 (1970), particularly if those gaps relate to issues on which the movant will bear the ultimate burden of proof at trial.

Moreover, a mere assertion by one party that its motion rests only upon undisputed facts does not relieve the Court of its responsibility to determine the appropriateness of summary disposition of the case. *See, e.g., Lockheed Martin Corp. v. United States*, 49 Fed. Cl. 241 (2001) (denying cross-motions for summary judgment where the parties failed to develop a sufficient factual record). In sum, a court must deny summary judgment if there is reason to believe that the better course would be to proceed to trial in order to obtain a full hearing of all the facts that may bear upon the outcome of the case. *See Anderson*, 477 U.S. at 255.

2. The Postal Service Is Not Responsible For The Damage To The Premises Because It Was Not A Holdover Tenant As Of December 20, 2000

It is undisputed that the Postal Service's lease for the Premises terminated as of November 30, 2000. By the plaintiff's own admission, the damage to the Premises occurred on or about December 20, 2000, nearly three weeks after the Postal Service's tenancy had ended. DPF 4. The linchpin of plaintiff's argument around this awkward fact is that the Postal Service was a holdover tenant in the Premises at the time when the damage was caused, on or about December 20, 2000. However, plaintiff offers few facts and little law to support this *sine qua non* of its case. Plaintiff appears to base its contention that the Postal Service was a holdover tenant upon two assertions: first, that the Postal Service did not turn over keys to the Premises until mid-January 2002, PPF 12, and, second, that the Postal Service had not entirely vacated the Premises as of December 26, 2000, PPF 6. With regard to the former of these assertions, there is abundant case law, as shown below, which stands for the proposition that a tenant's mere failure to return keys to the lessor does not, by itself, constitute a holdover tenancy. With regard to the latter assertion, the overwhelming evidence, both testimonial and photographic, shows that the

Postal Service had completely vacated the premises by the time of plaintiff's visit there on December 26, 2000.

A. A Tenant's Failure To Return Keys Does Not Constitute A Holdover

In its motion for summary judgment, plaintiff does not cite any case for the proposition, central to its case, that a tenant's tardy return of keys for leased premises constitutes a holdover. However, there is a cornucopia of cases for the opposite proposition, *i.e.*, that a tenant's failure to timely return keys to a lessor after leased premises are vacated, by itself, does not create a holdover. This has especially been established law at the United States Postal Service Board of Contract Appeals. *See, e.g., Magnolia Star LLC*, PSBCA Nos. 5310, 5337, 2006 PSBCA LEXIS 20 at *6 (Dec. 11, 2006); *J. Leonard Spodek, Nationwide Postal Management*, PSBCA No. 4323, 00-2 BCA ¶ 31,036 at 153,260 (July 27, 2000); *J. Leonard Spodek, Nationwide Postal Management*, PSBCA No. 4265, 00-1 BCA ¶ 30,670 at 151,487, n. 2 (Nov. 30, 1999); *National Construction Co.*, PSBCA Nos. 3902, 3929, 99-2 BCA ¶ 30,509 at 150,643; *T.W. Cole*, PSBCA No. 3076, 92-3 BCA ¶ 25,091 (May 13, 1992).[1]

[1] *See also Grisaffi v. Dillard Dept. Stores*, 43 F.3d 982, 984 (5th Cir. 1995); *Consumers Distributing Co., Ltd. v. Herman*, 812 P.2d 1274, 1277 (Nev. 1991) ("[T]he cases . . . agree that failure to return keys does not constitute a holdover."); *Wolff v. Manville Forest Products Corp.*, 486 So.2d 1085, 1093 (La. App. 1986) (No use of premises to constitute a holdover even though lessee retained control of the keys); *Morton Realty Co. v. Magnolia Warehouses*, 125 S.E.2d 102, 104 (Ga. App. 1962) (Retention of the keys by the tenant does not amount to occupancy or possession of the premises.); *Ernst v. Holzner*, 130 N.Y.S. 442 (N.Y. Sup. App. 1911) (Tenant's retention of the keys is not a holdover, which is a question of fact.)

Plaintiff's argument that the Postal Service's retention of the keys from November 30, 2000, through December 26, 2000, constituted a holdover is especially flimsy because there is no evidence that plaintiff even sought the keys within that period of time. Moreover, the December 2000 Settlement Agreement is silent on the subject of how the Postal Service was to turn over the keys to plaintiff. DPF 2. This agreement, ironically, was drafted and signed by J. Leonard Spodek, who, as shown above, had at least twice been advised by the Postal Service Board of Contract Appeals in written decisions prior to December 2000 that a tenant's failure to timely return keys to a lessor after leased premises are vacated, by itself, does not create a holdover. *See, e.g.*, *J. Leonard Spodek, Nationwide Postal Management*, PSBCA No. 4323, 00-2 BCA ¶ 31,036 at 153,260 (July 27, 2000); *J. Leonard Spodek, Nationwide Postal Management*, PSBCA No. 4265, 00-1 BCA ¶ 30,670 at 151,487, n. 2 (Nov. 30, 1999).[2] Thus, plaintiff's contention that the Postal Service's failure to return keys to the Premises by December 26, 2000, constituted a holdover tenancy is without merit. *See, e.g., Guidry v. Gary Cove*, 525 So.2d 569, 571 (La. App. 1988)(Contention that tenant never gave up possession because it retained the keys is without merit where plaintiff never asked for the defendant to return the keys); *Four "S" Alliance, Inc. v. American National Bank & Trust Co. of Chicago*, 432 N.E.2d 1213, 1217-18 (Ill. App. 1982)("In all significant respects, [lessees] recognized the termination of their tenancy and relinquished possession. Under the circumstances, the retention of the keys did not constitute evidence of a constructive eviction. Indeed . . . [the lessor] was able to gain access and had visited the premises.").

---

[2] In both of these cases Mr. Spodek was appearing *pro se*.

B. The Postal Service Had Vacated The Premises Before The Damage Occurred On December 20, 2000

Regardless of the key issue, plaintiff also alleges that the Postal Service had not vacated the Premises as of December 26, 2000. PPF 6. This assertion is based entirely upon double-hearsay in the Affidavit of J. Leonard Spodek (¶ 11). However, it is not supported by any other probative evidence. In fact, there is a significant and substantial factual record that the Postal Service had fully vacated the Premises as of plaintiff's visit on December 26, 2000. First, the Declaration of Arthur L. Wallace, Jr., the Postal Official who supervised the removal of Postal Service equipment in September 1999 establishes that the Postal Service had vacated the Premises more than a year before the damage. DPF 1. Mr. Wallace's statements are even corroborated by plaintiff's own evidence. Mr. Nathanson's December 26, 2000, inspection report, for instance, makes no mention of Postal Service equipment on the Premises. DPF 8. Likewise, the photographs that Mr. Nathanson took at the Premises on that day unmistakably show interior space that was totally free of Postal Service equipment. DPF 9. It is difficult to imagine more probative evidence of the interior of the building than these photographs. But they fail to show one piece of Postal Service equipment in a building that was once a retail post office. Moreover, plaintiff's own proposed finding of uncontroverted fact no. 7 states that the interior of the Premises was "unoccupied" as of December 26, 2000.

In sum, plaintiff has failed to show both factually and legally that the Postal Service was a holdover tenant following November 30, 2000. Thus, the Postal Service was not responsible under the Lease for the maintenance of the Premises after its tenancy ended on November 30, 2000. The simple fact is that plaintiff was slow in re-entering its property during a time of year

when time was of the essence, and plaintiff is now trying to shift to the Postal Service the responsibility for its own negligence.

3. Plaintiff Is Not Entitled To Claim The Depreciated Amount Of $59,211.70

Alternatively, if the Court should find that the Postal Service was a holdover tenant and responsible for the property damage to the Premises, the Postal Service should not be responsible for the $59,211.70 claimed by plaintiff as a diminution in the value of its property. This amount actually represents the depreciation of plaintiff's property, as calculated by its insurance company. Pl. Ex. G, line 4. This is an amount for which plaintiff is not entitled to seek recovery from defendant. *See, e.g., Container Co. v. United States*, 116 Ct. Cl. 706, 720-21 (Ct. Cl. 1950) ("We hold that the damages for which defendant is liable to its lessor are to be measured by the reproduction cost of the destroyed part of the building less 40% depreciation.").

4. Plaintiff Is Not Entitled To Claim From The Postal Service The Repair Cost Of $136,695.06 Because It Is Not Suing For The Use And Benefit Of Its Insurer

Plaintiff is also seeking to recover from the Postal Service the sum of $136,695.06, which plaintiff received from its insurer as the actual cash value of its claim. PPF 15-16. While it is true that an insured is generally not precluded from filing suit to recover for a loss where it has been made whole by its insurer, the insured must prosecute such an action for the use and benefit of the insurer. *North Slope Technical v. United States*, 27 Fed. Cl. 425 (1992). There is no indication that plaintiff is making this claim for the use and benefit of its insurer. DPF 13. Therefore, the Court should deny this claim.

CONCLUSION

For the foregoing reasons, the Court should grant defendant's cross-motion for summary

judgment. In the alternative, if the Court should hold the Postal Service liable, the Court should deny plaintiff's attempt to recover depreciation and the amounts that it received already from its insurer.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

THOMAS J. MARSHALL
Managing Counsel
Civil Practice Section
United States Postal Service

s/Michael Francis Kiely
MICHAEL FRANCIS KIELY
Civil Practice Section
Law Department
United States Postal Service
475 L'Enfant Plaza, S.W.
Room 6327
Washington, D.C. 20260-1127
(202) 268-4037

Date: March 19, 2007