**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ASSET 42302 LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 03-287C** |
| v. | ) | **(Judge Braden)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant is respectfully submitting its response to plaintiff's proposed findings of uncontroverted fact. Defendant shall reprint verbatim plaintiff's proposed findings of uncontroverted fact in italics (omitting supporting citations) and shall indicate immediately below each proposed finding whether it agrees or disagrees with the proposed finding as stated, and the basis for any objection.

1. *In April, 1997, Plaintiff acquired legal title to certain premises and commercial building located at 20548 Fenkell Road, Detroit, Michigan (the "Premises" or "Brightmoor Station").*

Defendant's Response: Defendant agrees.

2. *At the same time Plaintiff acquired title to the Premises, the United States Postal Service ("Postal Service") was in full possession and control of the Premises pursuant to a lease dated June 27, 1991, given to the Postal Service by the prior owner, First Lawrence Partnership (the "Lease").*

Defendant's Response: Defendant agrees.

3. *The Lease contained a 10-year term beginning on September 1, 1991, and ending on August 31, 2001. The stipulated annual rent was $51,625. The Postal Service was also responsible to pay property taxes due to the local municipality.*

Defendant's Response: Defendant agrees.

4. *Approximately ten months prior to the expiration of the Lease term, on or about November 1, 2000, the Postal Service advised Plaintiff of its intent to terminate the Lease and vacate the Premises.*

Defendant's Response: Defendant disagrees with this proposed finding of fact to the extent it states that the "*Postal Service advised Plaintiff of its intent to . . . vacate the Premises*" because the Postal Service had vacated the premises in September 1999. (Declaration of Arthur L. Wallace, Jr. ("Wallace Dec.") ¶ 5). Therefore, pursuant to RCFC 56(h)(2), defendant proposes the following revision to plaintiff's proposed finding of uncontroverted fact no. 4.

> 4. Approximately ten months prior to the expiration of the Lease term, on or about November 1, 2000, the Postal Service advised Plaintiff of its intent to terminate the Lease.

5. *On or about December 4, 2000, the Plaintiff and the Postal Service respectively agreed to settle Plaintiff's claim for rent due under the balance of the Lease term, and stipulated to terminate the Lease as of November 30, 2000 (the "December 2000 Settlement Agreement"). In consideration for surrendering the Premises and payment of a stipulated sum, Plaintiff agreed*

*to waive and release the Postal Service from any further claims under the Lease, including claims for "restoration" of the Premises.*

Defendant's Response: Defendant substantially agrees with this proposed finding. However, defendant proposes, pursuant to RCFC 56(h)(2), the following revision to plaintiff's proposed finding of uncontroverted fact no. 5 in order to include the agreed settlement amount.

5. On or about December 4, 2000, the Plaintiff and the Postal Service respectively agreed to settle Plaintiff's claim for rent due under the balance of the Lease term, and stipulated to terminate the Lease as of November 30, 2000 (the "December 2000 Settlement Agreement"). In consideration for surrendering the Premises and payment of the stipulated sum of $37,141.29, Plaintiff agreed to waive and release the Postal Service from any further claims under the Lease, including claims for "restoration" of the Premises.

6. *The Postal Service did not immediately surrender the Premises and on or about December 26, 2000, Joseph Nathanson, a principal of the Plaintiff, traveled to Detroit for the specific purpose of accepting the surrender from the Brightmoor Postmaster. The Postmaster, then located at the new Post Office facility located across the street from the former Brightmoor Station, told Mr. Nathanson that the Postal Service had not fully moved out of the former Brightmoor Station and that he was not authorized to surrender possession.*

Defendant's Response: Defendant substantially disagrees with this proposed finding. First, the December 2000 Settlement Agreement was silent regarding how or when the Postal Service was to surrender possession of the Premises to the plaintiff. Plaintiff's Exhibit

("Pl. Ex.") B. Second, the postmaster at the Brightmoor Post Office on December 26, 2000, was a woman, Janice Giles, and, therefore, she could not have been the source for the statement ascribed to her in this proposed finding of uncontroverted fact. Wallace Dec. ¶ 6. Third, the Postal Service had vacated the Premises in September 1999. *Id.* ¶ 5. Therefore, pursuant to RCFC 56(h)(2), defendant proposes the following revision to plaintiff's proposed finding of uncontroverted fact no. 6.

6. On or about December 26, 2000, Joseph Nathanson, a principal of the Plaintiff, traveled to Detroit for the specific purpose of accepting the surrender from the Brightmoor Postmaster.

7. *The Postmaster did, however, agree to lend Mr. Nathanson the keys and permitted Mr. Nathanson to perform an inspection of the Premises. Mr. Nathanson's inspection showed that the Postal Service was no longer using the Brightmoor Station as a postal facility and it was unoccupied. His inspection also showed that the hot water boiler was not operating, that the interior was unheated, that a copper pipe had frozen and burst, and that there was extensive ice and flooding within the Premises measuring approximately 1 to 3 inches deep. A report of Mr. Nathanson's inspection is Plaintiff's Exhibit C; contemporaneous photographs of the inspection are collectively submitted as Plaintiff's Exhibit D.*

Defendant's Response: Defendant agrees with this proposed finding of fact, but disagrees with the assertion that Mr. Nathanson was in contact with the postmaster. Wallace Dec. ¶ 6.

8. *The Maintenance Rider, set forth in Paragraph 29 of the Lease requires the Postal Service to maintain the boiler as part of the "demised premises." Paragraph 29 states, in relevant part, as follows:*

> *(a) The term "demised premises" as used in this section includes the premises themselves, the improvements and appurtenances to such premises, all equipment and fixtures furnished, or to be furnished by the Lessor under this lease, and all common or joint use areas that are part of the lease.*
>
> *(b) The Postal Service is responsible for ordinary repairs to, and maintenance of, the demised premises except for those repairs that are specifically made the responsibility of the Lessor in this lease. The Postal Service's responsibilities as stated herein will be fulfilled at such time and in such manner as the Postal Service considers necessary to keep the demised premises in proper condition.*
>
> *(c) The Lessor is responsible for: all parts of the roof system (including, but not limited to, roof covering, flashing, and insulation); repairs resulting from defects in building construction or installation of equipment, fixtures or appurtenances furnished by the Lessor as they pertain to the roof only.*

*Thus, the Postal Service was obligated by the Lease to maintain the Premises in its entirety, including the boiler, with the sole and irrelevant exception of the roof.*

Defendant's Response: Defendant agrees.

9. *Paragraph 30 of the Lease similarly provides that the Postal Service will be responsible for "restoration" costs to the Premises, and states as follows:*

> *Commencing with the execution date of this Lease the Tenant shall be responsible for the restoration of all damage or injury to the building or any other part of the premises which was caused by or resulted from any wanton or willful act which could be reasonably defined as gross negligence of the Tenant, Tenant's agents, employees, invitees or licensees or which resulted from any work, labor, service or equipment done for or supplied to the Tenant that resulted in the improper, wanton or willful misuse of the premises which could be reasonably defined as gross negligence.*

Defendant's Response: Defendant agrees.

10. *After Plaintiff advised the Postal Service of the substantial property damages caused by the Postal Service's failure to maintain the boiler as required by Paragraph 29, and the resulting frozen pipe and flooding, the parties entered into a [superseding] settlement agreement dated January 8, 2001 (the "January 2001 Settlement Agreement").*

Defendant's Response: Defendant disagrees with this proposed finding of fact to the extent it refers to "*substantial property damages caused by the Postal Service's failure to maintain the boiler.*" Defendant contends that it was not obligated to maintain the boiler system after termination of the Lease as of November 30, 2000. Therefore, pursuant to RCFC 56(h)(2), defendant proposes the following revision to plaintiff's proposed finding of uncontroverted fact no. 10.

> 10. After Plaintiff advised the Postal Service of the substantial property damages caused by the Postal Service's alleged failure to maintain the boiler as required by Paragraph 29, and the resulting frozen pipe and flooding, the parties entered into a superseding settlement agreement dated January 8, 2001 (the "January 2001 Settlement Agreement").

11. *Based on the property damages which arose <u>subsequent</u> to the December 2000 Settlement Agreement, the January 2001 Settlement Agreement was specifically intended to restore the "restoration" claims which had been previously waived and released. The only claims intended to be settled by the January 2001 Settlement Agreement were Plaintiff's claims*

*for rent from December 1, 2000 through the expiration of the Lease term on August 31, 2000.*

Defendant's Response: Defendant agrees with this proposed finding to the extent it states that the damages to the Premises arose subsequent to the December 2000 Settlement Agreement. Otherwise defendant disagrees with this proposed finding of uncontroverted fact. The January 2001 Settlement Agreement is silent as to the reasons it was entered into, and the integration clause found at paragraph 11 of the agreement states that "[t]his document constitutes a complete integration of the agreement between the parties and supersedes any and all prior oral or written representations, understandings or agreements among or between them." Plaintiff's Exhibit E, ¶ 11. Therefore, defendant disagrees with plaintiff's attempt to insert into an integrated agreement representations not found therein.

12. *Paragraph 2 of the January 2001 Settlement Agreement states, "[b]y copy of this agreement, the USPS is formally providing notification to Mr. Spodek that it is moving out of the Detroit, Michigan property [Brightmoor Station] on November 30, 2000." The Postal Service was thus required to surrender possession by that date. The Postal Service, however, did not vacate the Premises until on or about January 18, 2001.*

Defendant's Response: Defendant agrees with the first sentence of this proposed finding of uncontroverted fact. Defendant disagrees with the second and third sentences. With respect to the second sentence, the December 2000 Settlement Agreement was silent regarding how or when the Postal Service was to surrender possession of the Premises to the plaintiff. Pl. Ex. B. Therefore, the agreement itself does not support the interpretation given to it by plaintiff in the second sentence of this proposed finding. Regarding the third sentence, the Postal Service

had vacated the Premises by September 1999. Wallace Dec. ¶ 5. Moreover, to the extent that plaintiff is basing the third sentence on the fact that defendant did not turn over to plaintiff the keys to the Premises until on or about January 18, 2001, there is abundant case law to the effect that this fact alone does not constitute a holdover tenancy. *See, e.g., Magnolia Star LLC*, PSBCA Nos. 5310, 5337, 2006 PSBCA LEXIS 20 at *6 (Dec. 11, 2006); *J. Leonard Spodek, Nationwide Postal Management*, PSBCA No. 4265, 00-1 BCA ¶ 30,670 at 151,487, n. 2 (Nov. 30, 1999); *National Construction Co.*, PSBCA Nos. 3902, 3929, 99-2 BCA ¶ 30,509 at 150,643 (July 23, 1999).

13. *The Postal Service subsequently paid Plaintiff $37,141.29 in settlement of Plaintiff's rent claim in accordance with the January 2001 Settlement Agreement.*

<u>Defendant's Response</u>: Defendant agrees.

14. *Plaintiff submitted a property damage insurance claim to its insurance agent Memphis Insurance Group ("Memphis Insurance"). Memphis Insurance is an agency specializing in property and casualty insurance for Postal Service facilities nationwide, and writes insurance policies on behalf of various independent insurers. During the relevant periods herein, Memphis Insurance acted as agent for Redland Insurance Company ("Redland").*

<u>Defendant's Response</u>: Defendant agrees.

15. *Memphis Insurance, on behalf of Redland, retained the engineering services of GAB Robins, a nationally known insurance adjuster. On April 16, 2001, GAB Robins calculated*

*the total cost of repairs to be $195,906.76, and the actual cash value (ACV - calculated to be the total cost of repair less depreciation) to be $137,695.08. A copy of the report was provided to Plaintiff on May 10, 2001.*

Defendant's Response: Defendant agrees.

16. *On May 25, 2001, Plaintiff stipulated to GAB Robins' repair cost and depreciation calculations.*

Defendant's Response: Defendant agrees.

17. *By letter dated June 13, 2002, Plaintiff submitted a claim to the Postal Service contracting officer seeking payment of the uninsured portion of restoration costs, use and occupation and municipal taxes during the post November 30, 2000 holdover period. Municipal taxes on the Premises during December, 2000 and January, 2001 were $173.73 and $144.11, respectively.*

Defendant's Response: Defendant agrees.

18. *By letter dated July 25, 2002, the Postal Service denied the claim upon the ground that paragraph 6 of the January 2001 Settlement Agreement "released, waived and abandoned" Plaintiff's restoration claims.*

Defendant's Response: Defendant agrees.

19. *After substituting the undersigned legal counsel, Plaintiff filed a Second Amended*

*Complaint on December 16, 2006 (the "Complaint").*

Defendant's Response: Defendant agrees.

20. *The Postal Service answered the Complaint on January 17, 2006. As set forth therein, the only affirmative defense asserted by the Postal Service is based on an accord and satisfaction purportedly arising from the January 2001 Settlement Agreement.*

Defendant's Response: Defendant agrees.

21. *By Joint Preliminary Status Report dated March 10, 2006, the Postal Service withdrew its defense based on the January 2001 Settlement Agreement.*

Defendant's Response: Defendant agrees.

22. *The Postal Service has withdrawn the only affirmative defense raised in this action, thus, vitiating the only stated reason by the Postal Service contracting officer for denying Plaintiff's claim herein.*

Defendant's Response: Defendant disagrees. Defendant has pled an affirmative defense in its answer to the third amended complaint. Moreover, plaintiff's statement that defendant's actions have " [vitiated] the only stated reason by the Postal Service contracting officer for denying Plaintiff's claim herein" do not constitute a proposed finding of fact, but are instead a legal conclusion.

23. *Therefore, as more fully set forth in Plaintiff's accompanying memorandum of*

*law, Plaintiff requests judgment under the restoration provisions of paragraph 30 of the Lease for the full replacement and restoration costs in the amount of $195,906.76, or alternatively for consequential damages arising from the breach of the Postal Service's duty to repair and maintain the Premises pursuant to paragraph 26 of the Lease, measured by the actual cash value loss of $137,695.06, together with judgment in the amount of $8,917.00 for use and occupation from December 1, 2000 through surrender of the Premises in January 2001.*

Defendant's Response: Defendant disagrees. Plaintiff's proposed finding of uncontroverted fact no. 23 is actually a prayer for relief, not a proposed finding of fact.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

THOMAS J. MARSHALL
Managing Counsel
Civil Practice Section
United States Postal Service

s/Michael Francis Kiely
MICHAEL FRANCIS KIELY
Civil Practice Section
Law Department
United States Postal Service
475 L'Enfant Plaza, S.W.
Room 6327
Washington, D.C. 20260-1127
(202) 268-4037

Date: March 19, 2007