# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ASSET 42302 LLC,**<br>**Plaintiff,**<br>**v.**<br>**UNITED STATES OF AMERICA,**<br>**Defendant.** | **Civil Action. No. 03-287-C (SGB)** |

**DECLARATION OF JOSEPH NATHANSON**
**IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**(and in opposition to the Postal Service's Cross-Motion)**

1. I am a principal of the plaintiff, Asset 42302 LLC ("Asset") and I am familiar with the facts and circumstances set forth herein based upon my personal knowledge. I submit this declaration in further support of Asset's motion for summary judgment and in opposition to the Postal Service's cross-motion which speciously raises, for the first time, that it had "surrendered" legal possession of the Premises to Asset at some unspecified date prior to the December 20, 2000 date of casualty.

2. Specifically, I submit this affidavit to clarify my prior affidavit, sworn to October 19, 2006, by which I read and adopted the Affidavit of Leonard J. Spodek, sworn to October 19, 2006 and plaintiff's Proposed Findings of Uncontroverted Facts, dated October 20, 2006, and to particularize the events which followed the November 30, 2000 termination of the Lease and my meeting with the Postal Service on December 26, 2000.

3. Leonard Spodek, my business partner and a principal of Asset, signed the December 2000 Settlement Agreement on December 4, 2000 for the purpose of settling Asset's claim to recover unpaid rent that was otherwise due for the balance of the Lease term which was

set to expire on August 31, 2001. Since, as of December 4, 2000, the Lease term had not yet been modified and the contractual Lease term was still in effect, the Postal Service was, at the time, still in legal possessions of the Premises pursuant to the Lease.[1]

4. According to the date adjacent to the Postal Service's signature on the document, the December 2000 Settlement Agreement was not signed by the Postal Service until December 14, 2000, and was not received by Asset until on or about December 15. The December 2000 Settlement Agreement retroactively terminated the Lease term effective as of November 30, 2000, but did not contain any language to the effect that the Postal Service was contemporaneously surrendering legal possession of the Premises, or was returning the keys. Regarding the issue of possession, the December 2000 Settlement Agreement expressly contemplates a "forthcoming move" at a later date, Pl's Exhibit B, at ¶ 3, thus evidencing that the Postal Service remained in legal possession following the November 30 termination of the lease term, subject to further and subsequent notice by the Postal Service.

5. The Postal Service did not communicate with Asset after December 14, 2000 when the December 2000 Settlement Agreement was signed, and specifically gave no notice of surrender or notice that it had completed the "forthcoming move" specified in the agreement.

6. Having not heard from the Postal Service, I personally traveled from Asset's New York office to the Premises and met with a Postal Service representative for the purpose of accepting the surrender of possession of the Premises from the Post Office. This occurred 10 to

[1] Although the Postal Service claims in its cross-motion to have "vacated" the Premises in September, 1999, it does not clam that it gave Asset notice of a contemporaneous intent to surrender possession. Since Asset did not receive notice of the removal or of an intent to surrender, Asset did not and could not have accepted the surrender at the time.

12 days following receipt of the December 2000 Settlement Agreement, i.e., on December 26, 2000.

7. When I arrived at the Brightmoor Station, the Premises was locked, so I went across the street to the new Post Office to get the keys. A male representative of the Post Office eventually met with me who I believed at the time to be the Postmaster, but after reading the Declaration of Mr. Arthur L. Wallace, Jr. dated March 17, 2007, it now appears that it was Mr. Wallace who I met with and that his title at the time was that of Superintendent.

8. In any event, I asked to be given the keys to the Premises *unconditionally* so that Asset could accept a surrender and reclaim legal possession of the Premises, but I was unequivocally refused. The Postal Service representative whom I met with told me he was not authorized to surrender possession or unconditionally to deliver the keys to me. I then requested that he "lend" me the keys so I could at least perform an interior inspection of the Premises, to which the Postal Service representative agreed. When the keys were handed to me, it was with the agreement that they were to be returned to the Post Office at the end of my interior inspection.

9. I performed the interior inspection of the Premises as an invitee of the Post Office, at which time I discovered that the boiler was not working and that a pipe had burst, causing extensive water damage. I then returned the keys to the Post Office representative who physically accepted them in accordance with our earlier agreement that the Postal Service was not surrendering possession at that time.

10. Asset subsequently notified the Postal Service of the extensive property damage caused by its failure to maintain the hot water boiler and the exploded pipe, but the Postal

Service has steadfastly refused to repair the Premises or to pay the cost of the repairs, claiming that the December 2000 Settlement Agreement resulted in a release of Asset's restoration claim. However, Asset is advised by its attorneys that the defense of release was withdrawn by the Post Office, presumably because the January 2001 Settlement Agreement (Pl's Exhibit E) modified the December 2000 Settlement Agreement by removing the language relating to the release.

11. At no time in the past six years, from December 2000 to the date of the Postal Service's cross-motion, has the Postal Service ever claimed that they had surrendered possession of the Premises prior to the date of casualty on or about December 20, 2000. The belated raising of such claim at this late date is disingenuous, unfairly prejudicial and, as set forth in Asset's accompanying memorandum of law, inconsistent with the facts of this case and general principles of the law of landlord and tenant.

12. Therefore, for the reasons set forth in Asset's accompanying memorandum of law, it is respectfully requested that Asset be awarded judgment in the amount of $195,906.76, representing the restoration cost of damages caused by the Postal Service, or alternatively the actual cash value $137,695.06, together with use and occupation due from December 1, 2000 though surrender of the Premises in January, 2001.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 1, 2007

________/s/___________________________
JOSEPH NATHANSON