# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ASSET 42302 LLC,** | ) | |
| **Plaintiff,** | ) | **Civil Action. No. 03-287-C (SGB)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE POSTAL SERVICES'S CROSS-MOTION

**ROSENBERG CALICA & BIRNEY LLP**
***Attorneys for Plaintiff***
**100 Garden City Plaza, Suite 408**
**Garden City, New York 11530**
**(516) 747-7400**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

THE POSTAL SERVICE HAS FAILED TO RAISE A TRIABLE ISSUE WITH REGARD TO ITS STATUS AS A HOLDOVER TENANT IN POSSESSION AT THE TIME PROPERTY DAMAGES WERE INCURRED . . . . . . . 4

A. The contention that the Postal Service "vacated" the premises in September, 1999 did not effect a legal surrender of the leasehold estate . . . . . . . 7

B. The December 2000 Settlement Agreement modified and abbreviated the Lease term but did not effect a surrender or termination of the leasehold estate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C. The Postal Service continued as a tenant at will by failing to give notice of Surrender of the leasehold estate prior to the December 20, 2000 date of casualty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

D. The Postal Service's affirmative *refusal* to deliver the keys to the Premises on December 26, 2000 confirms that the Postal Service had not surrendered the leasehold estate as of the date of casualty on December 20, 2000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT II

PLAINTIFF'S INSURANCE POLICY IS NO DEFENSE TO THE GOVERNMENT'S LIABILITY FOR PROPERTY AND RESTORATION DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

POINT III

THERE IS NO CONTRACT LANGUAGE REDUCING PLAINTIFF'S RECOVERY BY THE DEPRECIATED AMOUNT . . . . . . . . . . . . . . . . . . . . . . . . . . 20

POINT IV

THE POSTAL SERVICE IS LIABLE FOR USE AND OCCUPATION FOR HOLDING OVER BEYOND THE STIPULATED LEASE TERMINATION DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**TABLE OF AUTHORITIES**

**Federal Cases**

Allenfield Assoc. v. United States
40 Fed. Cl. 471 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Beall v. White
94 U.S. 382, 24 L.Ed. 173 (1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Container Co. v. United States
116 Ct. Cl. 706 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

District of Columbia v. United States
67 Fed. Cl. 292 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Grisaffi v. Dillard Department Stores, Inc.
53 F.3d 982 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hughes Communications Galaxy, Inc. v. United States
38 Fed. Cl. 578 (1997), affd. 271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 19

Modeer v. United States
68 Fed. Cl. 131 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

North Slope Technical, Ltd. v. United States
27 Fed.Cl. 425 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

WDC West Carthage Associates v. United States
324 F.3d 1359 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Yachts America Inc. v. United States
673 F.2d 356 (Ct. Cl. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 23

**State Cases**

Brunswick Corp. v. Goodie Investments, Inc.
451 S.W.2d 421 (Ky. Ct. App. 1970) . . . . . . . . . . . . . . . . . . . . . 3, 6, 9, 10, 13, 14, 18, 22

Consumers Distributing Co., Ltd. v. E.T. Hermann
812 P.2d 1274 (N.V. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Crawford v. Haywood
392 S.W.2d 387 (Tx. Ct. App. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Currier v. Perley
24 N.H. 219 (1851) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ernst v. Holzner
130 N.Y.S. 442 (App. Term N.Y. Co. 1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fishel v. Barnelli, Ltd.
463 N.Y.S.2d 1009 (Civ. Ct. N.Y. Co. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 18

M&V Barocas v. THC, Inc.
549 N.W.2d 86 (Mich. Ct. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Morton Realty Co. v. Magnolia Warehouses
125 S.E. 2d 102 (Ga. Ct. App. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pyle v. Orzell
86 N.W.2d 163, 166 (Mich. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Sanden v. Hanson
201 N.W.2d 404 (N.D. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Taylor v. Tuson
51 N.E. 462 (Mass. 1898) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Walker v. Furbush
65 Mass. 366 (1853) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Wolff v. Manville Forest Products Corp.
486 So.2d 1085 (L.A. App. 2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Administrative Authorities**

Appeal of J. Leonard Spodek
PSBCA No. 4265, 1999 WL 1083708 (November 30, 1999) . . . . . . . . . . . . . . . . . . . . . . 16

Appeal of J. Leonard Spodek
PSBCA No. 4323, 2000 WL 1911717 (July 27, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Appeal of National Construction Co.
PSBCA No. 3902, 1999 WL 538171 (July 23, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Appeal of T.W. Cole
PSBCA No. 3076, 1992 WL 110304 (May 13, 1992) . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Magnolia Star LLC
PSBCA No. 5310, 2006 WL 4072274 (December 11, 2006) . . . . . . . . . . . . . . . . . . . . . . 15

**Other Authorities**

49 Am Jur. 2d (Landlord and Tenant) §118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

49 Am. Jur. 2d (Landlord and Tenant) §124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

52 C.J.S. Landlord & Tenant § 274 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

52A C.J.S. Landlord & Tenant §1148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ASSET 42302 LLC,** | ) | |
| **Plaintiff,** | ) | **Civil Action. No. 03-287-C (SGB)** |
| **v.** | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE POSTAL SERVICE'S CROSS-MOTION

### Preliminary Statement

There is no merit to the Government's contrived, last ditch contention that it is not responsible for massive water damages to the Premises because, at some yet unspecified time, it "surrendered" legal possession and freed itself from its contractual obligation to maintain the hot water boiler. The Government's contention cannot survive controlling summary judgment principles, the Government's burden of proof in this regard, and the uncontested summary judgment record which unequivocally dispels any notion that possession and control of the leased Premises had reverted back to the plaintiff at the time of the casualty on December 20, 2000.

It is well settled that, under general principles of landlord and tenant law, the surrender of a premises in order to avoid liability to the landlord under a lease is an affirmative defense for which the *tenant* bears the burden of pleading and proving. See infra, pp. 4-5. The Postal Service did not raise the defense of surrender in its July 28, 2002 claim denial (Pl's Exhibit I),

the January 5, 2007 claim denial (Supplemental Declaration of Robert J. Howard, dated February 16, 2007, at Exhibit C), or even the Postal Service's third amended answer to the complaint, dated February 7, 2007 (Supplemental Declaration at Exhibit E). The Government's last minute, conclusory assertion that there was a "surrender" of the Premises, without <u>any</u> relevant facts to support the contention, fails to raise a triable issue, both because the Government's proffered evidence fails to satisfy its burden of proof, and because the summary judgment record otherwise *conclusively dispels* the claim. See Point I, infra.

Indeed, the Postal Service <u>fully</u> <u>concedes</u> that it: (1) *affirmatively refused* to deliver the keys to the Premise when specifically requested to do so on December 26, 2000 by agreeing only to *lend* them; and (2) the December 2000 Settlement Agreement (signed by the Postal Service on December 14, 2000) contained no covenant whatsoever establishing a surrender of possession, admitting in its response to paragraph 6 of plaintiff's proposed uncontroverted facts, *"[t]he December 2000 Settlement Agreement was silent regarding how or when the Postal Service was to surrender possession of the Premises to the plaintiff."*

Since the Postal Service has otherwise completely failed to present any evidence to meet its burden that it gave plaintiff any notice of surrender until January 18, 2001, when the Postal Service admits it finally returned the keys to the plaintiff (<u>admitting</u> in response to paragraph 12 of plaintiff's proposed statement of uncontroverted fact that, *". . . [the Postal Service] did not turn over to plaintiff the keys to the Premises until on or about January 18, 2001 . . .."*) the Postal Service cannot, based on this summary judgment record, escape the conclusion that it remained in legal possession of the Premises as a holdover and that it remained liable under the Lease after the term expired on November 30, 2000 through the date of casualty on December

20, 2000. See Yachts America Inc. v. United States, 673 F.2d 356, 365 (Ct. Cl. 1982) ("[W]hen a lessee holds over without new agreement after the expiration of his lease, the terms of the old lease agreement apply"), cert. denied 459 U.S. 839, 103 S. Ct. 86, 74 L.Ed.2d 81 (1981); Brunswick Corp. v. Goodie Investments, Inc., 451 S.W.2d 421 (Ky. Ct. App. 1970) (tenant's refusal to "turn over" the keys to the landlord caused tenant to *"holdover during the remainder of the lease period after having given notice of cancellation of lease. . ..";* tenant's affirmative refusal to deliver the keys when asked dispelled the contention that there was a surrender, and compelled the conclusion that the tenant was a holdover).

Other than the contention that it surrendered its tenancy prior to the December 20, 2000 casualty, the Postal Service otherwise concedes that it was liable under the Lease to maintain the boiler, restore the Premises, and repair the water damages caused by the frozen water pipe. The Postal Service also does not object to the costs of repair and depreciation calculations of insurance adjusters GAB Robbins (Pl's Exhibits G and H).

Finally, the Postal Service's citation to North Slope Technical, Ltd. v. United States, 27 Fed.Cl. 425 (1992) for the proposition that a government contractor *may only* bring an action *"for the use and benefit of its insurer"* and cannot bring a claim on its own behalf is a complete misreading of that case. A careful reading makes clear that the Government cannot claim any benefit under an insurance policy for which it is neither a named nor an intended beneficiary, and that even if a landlord elects to purchase insurance for its own benefit and receives a payment in accordance with the contract of insurance, the Government receives no benefit under the policy and remains fully liable to the landlord for damages resulting from its breach of the lease. Contrary to the Postal Service's contention, the cited case merely holds that a contractor

*may* sue for the "use and benefit of its insurer", but there is absolutely *no requirement* that a contractor *must* so proceed ("the action *can* proceed in the name of [the contractor] for the use and benefit [of the insurer]"; "no general rule *prohibiting* the contractor from suing for the use and benefit of an insurer").

There is simply no basis for the Government's contention that it should be *exonerated* from liability for its own wrongful conduct by reason of an insurance policy which it *neither paid for nor was named as a beneficiary of.* Had the Postal Service intended to be covered by insurance, it could have purchased its own policy, at its own expense, or bargained with the plaintiff to be named as an additional insured, also at its own expense. Having elected not to do so, choosing instead to save the expense and assume the risk, the Postal Service simply cannot complain that it is liable to the plaintiff for property damages and breach of contract caused by its own negligent conduct.

We address these issues in detail below.

**POINT I**

**THE POSTAL SERVICE HAS FAILED TO RAISE A TRIABLE ISSUE WITH REGARD TO ITS STATUS AS A HOLDOVER TENANT IN POSSESSION AT THE TIME PROPERTY DAMAGES WERE INCURRED**

It is well settled that when construing a lease to which the Federal Government is a party, Federal law applies unless there is a paucity of authority on point, in which case a government lease is governed by *"the best in modern decision and discussion, including the general principles of contract and landlord tenant law."* Allenfield Assoc. v. United States, 40 Fed. Cl. 471, 480-81 (1998).

It also black letter law that the assertion of a "surrender" in the landlord-tenant context is

an *affirmative defense* for which the *tenant* bears the burden of proof. See 52A C.J.S. Landlord & Tenant §1148 ("After the landlord has proved execution of the lease, occupancy and nonpayment of rent, the burden then devolves on the tenant to prove a valid excuse for such nonpayment, such as . . . a surrender and acceptance"); Sanden v. Hanson, 201 N.W.2d 404, 409 (N.D. 1972) (tenant must plead and prove surrender of lease as defense to action for rent due under lease); Crawford v. Haywood, 392 S.W.2d 387, 388 (Tx. Ct. App. 1965) ("It has long been held that a tenant relying upon either express surrender or surrender in fact of a lease by the landlord must affirmatively plead and prove the same and that a general denial does not raise such issue."); M&V Barocas v. THC, Inc., 549 N.W.2d 86, 88 (Mich. Ct. App. 1996) ("The burden of proving surrender is on the party asserting surrender.")[1]

Thus, in order for the Postal Service to have met its burden of establishing that the Premises was surrendered prior to the December 20, 2000 date of casualty, the Postal Service was required to submit credible evidence, in admissible form, that there was an express or implied agreement between the landlord and the tenant to terminate the tenancy and return legal possession of the premises to the landlord. As explained by the United States Supreme Court:

> Text-writers agree that a surrender is the yielding up the estate to the landlord, so that the leasehold interest becomes extinct by mutual agreement between the parties. It is either in express words, by which the lessee manifests his intention of yielding up his interest in the premises, or by operation of law, when the

[1] Moreover, since the concept of a surrender involves an offer and acceptance discharging the parties' relationship as landlord and tenant, see Beall v. White, 94 U.S. 382, 389, 24 L.Ed. 173 (1876), surrender is analytically similar to accord and satisfaction. Accordingly, the Postal Service should have pleaded the defense of surrender pursuant to Rule 8(c) of the R.C.F.C. By raising the defense for the first time after the close of discovery, plaintiff, at a minimum, should be given an opportunity to re-open discovery on this limited issue. Cf. District of Columbia v. United States, 67 Fed. Cl. 292, 336 (2005) (considering accord and satisfaction defense on the merits despite defendant's failure to raise the defense in its answer where plaintiff was not prejudiced in obtaining discovery).

> parties without express surrender do some act which implies that they have both agreed to consider the surrender as made.

Beall v. White, 94 U.S. 382, 389, 24 L.Ed. 173 (1876).

General principles of landlord and tenant law similarly provide that there must be a mutual agreement between the landlord and tenant in order to effect the termination of a leasehold estate:

> A term for years may be terminated by a surrender, which, as that term is used in the law of landlord and tenant, is the yielding up by the tenant of the leasehold estate to the landlord so that the leasehold estate comes to an end by mutual agreement of the parties. . . . Surrender of a lease embodies the characteristics of both a contract and a conveyance. For surrender of a lease to occur, the lessor and lessee must have a meeting of the minds and must mutually agree that there be a surrender of the lease. Such agreement may be either express or implied....

See 52 C.J.S. Landlord and Tenant §192.

As discussed below, nothing set forth in the declaration of Arthur L. Wallace, Jr., dated March 17, 2007 ("Wallace Dec.") or contained any other part of the summary judgment record, establishes any intent by the Postal Service whatsoever to "yield up" its interest in the Premises so as to even offer a surrender of the tenancy. To the contrary, the uncontested fact that the Postal Service *affirmatively refused* to deliver the keys when asked to do so by the landlord's principal, in person on December 26, 2000, dispels any possibility that there was a "yielding up" of the leasehold estate sufficient to establish a legal surrender prior to the December 20, 2000 date of casualty. See Brunswick Corp. v. Goodie Investments, Inc., 451 S.W.2d 421 (Ky. Ct. App. 1970) (*"[W]ritten cancellation of lease did not of itself return to [landlord] its property; only a surrender of the property would effect that."; where tenant refused to deliver keys and did*

*not surrender possession despite written cancellation of lease, tenant remained liable for rent to landlord*); Fishel v. Barnelli, Ltd., 463 N.Y.S.2d 1009 (Civ. Ct. N.Y. Co. 1983) ("*[tenant's] refusal to return the keys and terminate th e lease certainly does not indicate an intent to 'yield up an interest in the leasehold' [citation omitted]. Thus, there was no surrender and acceptance of the leasehold.*")

**A. The contention that the Postal Service "vacated" the premises in September, 1999 did not effect a legal surrender of the leasehold estate.**

The Postal Service's contention that it vacated the Brightmoor Station in September, 1999 did not effect a surrender or termination of the Lease. At the time of the purported removal in September 1999, the Lease was not due to expire until August 31, 2001 (since the December 2000 Settlement Agreement which shortened the term to November 30, 2000, had not yet been signed). It is well settled that the *mere unilateral act of vacating* a leased premises during the lease term does *not* effect a termination of the lease or a mutual agreement to surrender legal possession, as a matter of law. See M&V Barocas v. THC, Inc., 549 N.W.2d 86, 88 (Mich. Ct. App. 1996) ("Surrender of a lease involves more than mere abandonment of the premises by the tenant; it requires a mutual agreement between landlord and tenant to terminate the lease"); Pyle v. Orzell, 86 N.W.2d 163, 166 (Mich. 1957) ("Mere vacating or abandonment of the premises does not of itself act to exonerate the tenant or act as a surrender [citations omitted]; mutual agreement to terminate the original lease must also be made out.")

Moreover, even if the Postal Service subjectively intended to surrender the Lease in September 1999, such subjective intent was a legal nullity in light of the Postal Service's full admission that the first time it advised plaintiff of its desire to terminate the Lease prior to the stated expiration of the term was November 1, 2000. See Government's responses to plaintiff's

proposed findings of fact, dated March 19, 2007, at ¶4. Therefore, as of September 1999, there was not even a communication of an offer to surrender which could possibly have been accepted by the landlord.

There is simply no evidentiary basis upon which to conclude that the Postal Service offered and the plaintiff accepted a proffered surrender of the Premises at the time the Postal Service claims to have vacated in September, 1999. Since there was no surrender, the landlord-tenant relationship survived the purported vacature of the Premises at the time.

**B. The December 2000 Settlement Agreement modified and abbreviated the Lease term but did not effect a surrender or termination of the leasehold estate.**

Since, on November 1, 2000, the Postal Service first notified plaintiff of its desire to terminate the Lease prior to the expiration of the term and move its operations to a new postal facility, the parties negotiated and entered into the December 2000 Settlement Agreement. The agreement clearly states that its purpose is to settle the landlord's claims for unpaid rent that would have come due for the unexpired term of the Lease, which was scheduled to expire in August, 2001. The rent compromise was $37,141.29. See Pl's Exhibit B, ¶ 5.

The effect of the December 2000 Settlement Agreement was that, in consideration for the $37,141.29 payment, the Lease term was to abbreviated to November 30, 2000, giving the Postal Service an option to terminate it had not originally bargained for. The agreement, however, did <u>not</u> provide that the Postal Service was contemporaneously surrendering legal possession of the Premises to the plaintiff. To the contrary, the agreement, dated December 4, 2000 by the plaintiff, and dated December 14, 2000 by the Postal Service states, in the present progressive tense, that the Postal Service *"is moving out"* of the Premises and that there would be a *"forthcoming move"*. Pl's Exhibit B, ¶¶ 2 and 3. Such forward looking language is

demonstrative of the Postal Service's contemporaneous intent to cut off its obligation to pay rent through August, 2001, but *retain* legal possession and control of the Premises, at least for a limited period of time, subject to further subsequent notice. The reservation of the right to *retain* possession subject to the "forthcoming move" is utterly contradictory to any contemporaneous intent to "yield up" its interest in leasehold estate.

The December 2000 Settlement Agreement states, in relevant part, as follows:

> 2. By a copy of this agreement, the USPS is formally providing notification to Mr. Spodek that it *is moving out* of the Detroit, Michigan property on November 30, 2000.
>
> 3. Notification was given by telephone regarding the *forthcoming move*.
>
> 4. The parties have mutually agreed to terminate the lease for the Brightmoor Station, Detroit Michigan facility effective November 30, 2000.

Thus, the mutual intent of the parties, as expressed through these written covenants, was to modify and terminate the lease term, but leave the Postal Service in possession and control of the Premises subject to further notice of surrender awaiting what the Postal Service characterized as the *"forthcoming move"*. See, e.g., <u>Brunswick Corp. v. Goodie Investments, Inc.</u>, 451 S.W.2d 421 (Ky. Ct. App. 1970) (*"[W]ritten cancellation of lease did not of itself return to [landlord] its property; only a surrender of the property would effect that."; where tenant refused to deliver keys and did not surrender possession despite written cancellation of lease, tenant remained liable for rent to landlord*). Had the parties intended to effect a surrender of the tenancy and terminate the landlord-tenant relationship at the time, the agreement would have so specified by including language, in the present or past tense, to the effect that the Postal Service *had tendered* possession and control of the Premises back to the plaintiff.

The Postal Service <u>fully</u> <u>admits</u> that the December 2000 Settlement Agreement has no

covenant to establish a surrender of possession.

> *"[T]he December 2000 Settlement Agreement was silent regarding how or when the Postal Service was to surrender possession of the Premises to the plaintiff."*

See Postal Service's response to paragraph 6 of plaintiff's proposed findings of uncontroverted fact. The Postal Service's admission that the December 2000 Settlement Agreement does not contain a covenant to surrender legal possession conclusively establishes that there was no intent to surrender at the time and that the surrender of possession had not occurred as of December 14, 2000, when the Postal Service signed and delivered the agreement. Pl's Exhibit B.

Since the modified term of the Lease came to an end as of November 30, 2000, and the Postal Service fully admitted that it retained possession and control of the Premises by not tendering a surrender (affirmatively stated that there would be a "*forthcoming move*") the effect of the December 2000 Settlement Agreement was to terminate the Lease term and put the Postal Service into the position of a holdover tenant at sufferance. See 49 Am. Jur. 2d (Landlord and Tenant) §124 (party is a tenant at sufferance when he rightfully takes possession of leased premises and remains in possession following expiration of the term); Brunswick Corp. v. Goodie Investments, Inc., 451 S.W.2d 421 (Ky. Ct. App. 1970) (cancellation of lease term without surrender of possession resulted in holdover tenancy).

Based on plaintiff's acquiescence in the Postal Service's continued use and legal occupation of the Premises past the November 30, 2000 modified lease termination date, the tenancy at sufferance was converted to a tenancy at will. See 49 Am. Jur. 2d (Landlord and Tenant) §284 ("At the sole option of the landlord, a tenant-at-sufferance may be evicted as a trespasser or treated as a holdover tenant, and when the landlord chooses the latter, a holdover

tenancy, which is governed by the same terms of the original lease, is created"); 49 Am Jur. 2d (Landlord and Tenant) §118 ("[A]nything that indicates permission of the landlord for the tenant to remain in possession will have [the] effect [of creating a tenancy-at-will].")

**C. The Postal Service continued as a tenant at will by failing to give notice of Surrender to the leasehold estate prior to the December 20, 2000 date of casualty.**

Based on the complete absence in the record of any of notice of surrender during the critical period after the Lease term expired on November 30, 2000, the Postal Service's tenancy at will must be deemed to have continued through the date of casualty on December 20, 2000. In the absence of a mutual agreement to surrender, the only way a tenant at will can terminate the landlord-tenant relationship is by the giving of *notice.* Even the unilateral act of vacating the premises, if done without notice of intent to surrender, is ineffective to terminate a tenancy at will:

> A tenancy at will can be terminated by surrender and acceptance. A tenancy at will is not, however, terminated by the mere act of the tenant in vacating the premises, where the landlord does not accept the surrender. Additionally, there must, where necessary, also be a proper legal notice given by the tenant of his or her *intention to terminate the tenancy*.

52 C.J.S. Landlord & Tenant § 274; citing Achille v. Baird, 361 S.W. 2d 439, 444 (Tex. Civ. App. 1962) (quoting 51 C.J.S. Landlord and Tenant § 174, *"A tenancy at will may be terminated by surrender and acceptance. A tenancy, however, is not terminated by the mere act of the tenant in vacating the premises, where the landlord does not accept the surrender, but there must also be a proper legal notice given by the tenant of his intention to terminate the tenancy.*"; merely vacating in the absence of notice of intent to surrender does not terminate tenancy at will); Currier v. Perley, 24 N.H. 219 (1851):

> By the general rule of the common law, in cases of tenancies at will . . . neither party can put an end to the tenancy, against the will of the other party, without the notice to quit required by the law. And the rule in this respect is alike for both parties. The tenancy continues, whatever either party alone may do, until the notice to quit is given and the day specified in the notice has arrived.
>
> * * *
>
> [T]he mere act of leaving the property by the lessee [without notice of intent to surrender] did not end the contract, nor restore the property to the lessor. . .. The tenant had a lawful control of the building, and had a perfect right to use his own pleasure in relation to the occupation of it, and the lessor had no right to complain, *whether it was fully or partially occupied.*
> Under such circumstances there remained but one course for the tenant to discharge himself of his liability [under the lease as a tenant at will]: *namely, to give the notice to quit . . . and thus put an end to his contract and his tenancy. If he did not choose to do this, he has no right to complain [that he remains liable under the lease]. . ..*

Id.; see also <u>Taylor v. Tuson</u>, 51 N.E. 462 (Mass. 1898) (tenancy at will continues until tenant gives notice accepted by landlord; "*tenancy at will was not determined by the tenant vacating the premises.*"); <u>Walker v. Furbush</u>, 65 Mass. 366 (1853) (tenant who fails to give notice of termination of tenancy at will still "*holds* [the premises], though he does not actually occupy or enjoy [and thus remains liable to landlord]);

Thus, in order for the Postal Service to meet its burden of establishing that it surrendered the Premises after the Lease terminated on November 30, 2000, and before the casualty on December 20, 2000, it was incumbent upon the Postal Service to submit evidence that it gave *notice of its intent to surrender*. The Postal Service again fails to meet its burden of proof because the summary judgment record is completely devoid of <u>any</u> evidence whatsoever that the Postal Service gave notice of a surrender after the November 30, 2000 Lease termination and

before the December 20, 2000 date of casualty. Therefore, the Postal Service must be deemed to have been a holdover tenant in possession as a tenant at will, responsible to maintain the boiler under the expired lease, and liable for damages for its failure to do so. See Yachts America Inc. v. United States, 673 F.2d 356, 365 (Ct. Cl. 1982); Brunswick Corp. v. Goodie Investments, Inc., 451 S.W.2d 421 (Ky. Ct. App. 1970).

Not only has the Postal Service failed to meet its burden of proof in this regard, but the undisputed fact that the Postal Service *affirmatively refused* to deliver the keys when requested on December 26, 2000, six (6) days after the casualty, evidences that the Postal Service intended to *retain possession and control* of the Premises and conclusively dispels any notion that there was a surrender as of the December 20, 2000 date of casualty.

**D. The Postal Service's affirmative *refusal* to deliver the keys to the Premises on December 26, 2000 confirms that the Postal Service had not surrendered the leasehold estate as of the date of casualty on December 20, 2000**.

While it is true that the mere *failure by omission* to return the keys is not conclusive evidence of an intent to retain possession and control of leased premises, and thus is not, in and of itself, conclusive evidence of a holdover, the Postal Service overlooks that it did not merely forget, neglect, or fail to return the keys. The uncontested fact is that it *affirmatively refused* to unconditionally turn them over when specifically asked for them by the landlord's principal, in person, agreeing only to *lend* the keys to the plaintiff to make the December 26, 2000 inspection as an invitee, and requiring the return of the keys after conducing the inspection. The affirmative refusal to unconditionally deliver the keys, the traditional symbol of legal possession, is inconsistent with there having been an intent to surrender possession which requires the unequivocal *"yielding up"* of a tenant's interest in the leased premises. See Brunswick, 451

S.W.2d at 422 (despite written cancellation of lease during the term, tenant's *refusal* to "turn over" the keys to the landlord caused tenant to *"holdover during the remainder of the lease period after having given notice of cancellation of lease. . .."*; based on tenant's refusal to deliver the keys when asked, there was no surrender, tenant was a holdover, and remained liable for rent under the terminated lease); Fishel v. Barnelli, Ltd., 463 N.Y.S.2d 1009 (Civ. Ct. N.Y. Co. 1983) ("[tenant's] *refusal* to return the keys and terminate the lease certainly does not indicate an intent to 'yield up an interest in the leasehold' [citation omitted]. Thus, there was no surrender and acceptance of the leasehold.").

Plaintiff's proposed findings of uncontroverted facts state that Mr. Nathanson traveled to the Brightmoor Station on December 26, 2000 for the specific purpose of accepting the surrender of possession. Id. at ¶6. In its response to this proposed findings of fact, the Postal Service fully concurs. Since both sides agree that the very purpose of the December 26, 2000 meeting was to *accept the surrender* of the Premises, it is not disputed that there was no effective surrender before then, and thus the Postal Service was still an at will tenant in possession.

Moreover, at paragraphs 6 and 7 of plaintiff's proposed findings of fact, it is clear that Mr. Nathanson requested the surrender of the Premises from the Postal Service's representative,[2] but was advised that there was no authority to return the keys unconditionally, and was advised that the Postal Service representative was only able to *lend* the keys to Mr. Nathanson so he could inspect the Premises as an invitee. The Postal Service does not dispute that at the time of the December 26, 2000 meeting, the Postal Service only agreed to *lend* the keys, *refusing to give*

[2] For the purpose of this motion, plaintiff's accept Mr. Wallace's representation that he was the person who dealt with Mr. Nathanson during the December 26, 2000 meeting and that his title at the time was "Superintendent" rather than "Postmaster", which we submit is, in any event, not a material fact.

*them unconditionally* (agreeing with the statement that the Postal Service "did . . . agree to *lend* Mr. Nathanson and permitted [him] to perform an inspection of the Premises.") See also, Declaration of Joseph Nathanson, dated May 1, 2007, at ¶¶ 7 to 8.

Furthermore, although the Postal Service purports to deny that the Postal Service representative (now known to be Mr. Wallace) stated during the December 26, 2000 meeting that he was *"not authorized to surrender possession"*, the bare denial is not supported by any statements in the Wallace Dec. or otherwise in the summary judgment record, and thus deserves no evidentiary weight.

The Postal Service relies heavily on the legally correct but entirely misplaced legal principle that the mere failure of a tenant to return keys to the landlord at the end of a lease term is not, in and of itself, indicative of an intent to retain possession and control (inconsistent with an intent to yield up the tenant's possessory interest in the tenancy), sufficient to establish a holdover. All of the Postal Service's cases in this regard are distinguishable because in each case the tenant had otherwise provided either express or implied notice of an intent to surrender possession, and with the lone exception of Appeal of T.W. Cole, PSBCA No. 3076, 1992 WL 110304 (May 13, 1992) which is unique to its facts and is separately distinguished below, none involved a tenant who had *expressly refused* to return keys when directed to do so. See Magnolia Star LLC, PSBCA No. 5310, 2006 WL 4072274 (December 11, 2006) (Postal Service's *failure* and omission to return the keys was not, *in and of itself*, sufficient to create a holdover, where the government otherwise *"demonstrated no intention to retain possession or deny [landlord] access to the [leased premises]."* ); Appeal of J. Leonard Spodek, PSBCA No. 4323, 2000 WL 1911717 (July 27, 2000) (Postal Service actually delivered keys within days of

lease termination and never refused to do so; brief delay in delivering keys does not evidence an intent to retain possession and control of leased premises); Appeal of J. Leonard Spodek, PSBCA No. 4265, 1999 WL 1083708 (November 30, 1999) (Postal Service never refused to deliver keys; retained keys at specific request of the landlord and gave notice that keys were available to be picked up); Appeal of National Construction Co., PSBCA No. 3902, 1999 WL 538171 (July 23, 1999) (Postal Service never refused to give keys; "*failure* to turn over keys, by itself, did not constitute continuing occupancy of the premises."); Morton Realty Co. v. Magnolia Warehouses, 125 S.E. 2d 102 (Ga. Ct. App. 1962) ("tenant's counsel . . . notified the landlord's counsel that the tenant *had* moved out and that he had the key"; no affirmative refusal to give key); Consumers Distributing Co., Ltd. v. E.T. Hermann, 812 P.2d 1274 (N.V. 1991) (landlord given notice of tenant's vacature of premises; holdover based on a failure to perform restoration repairs rejected as "not extensive enough to at operation of law should create a holdover"); Grisaffi v. Dillard Department Stores, Inc., 53 F.3d 982 (5th Cir. 1995) (no indication that landlord asked or that tenant affirmatively refused to delivery keys); Ernst v. Holzner, 130 N.Y.S. 442 (App. Term N.Y. Co. 1911) (finding that landlord had actual notice that tenant intended to surrender, did not demand the return of the keys, and accomplished actual re-entry into leased premises contemporaneously with the expiration of the lease term); Wolff v. Manville Forest Products Corp., 486 So.2d 1085 (L.A. App. 2d Cir. 1986) ("[tenants] had advised the [landlord] that they would not occupy the leased premises [as of a date certain] which was acknowledged by [the landlord]."; no refusal to tender keys).

The only cases in which there was an affirmative refusal to tender the keys involved a landlord who had *already accepted the surrender of the premises* and took possession *before* the

keys were refused. Since the leased premises had already been surrendered to the landlord, the refusal to give the keys was correctly deemed irrelevant. Appeal of T.W. Cole, PSBCA No. 3076, 1992 WL 110304 (May 13, 1992). In Cole, the lease at issue expired on October 31, 1990. The Board found that the landlord was on the site on November 14 and 15, 1990, and thus knew that the Postal Service substantially removed its property by the end of the 15th and the beginning of November 16th. The Board found that the surrender had occurred and holdover period ended on the 16th of November. Although the landlord had periodically requested the keys, the Postal Service did not affirmatively refuse to give them until December and January, 1991, which was after the landlord had already entered the premises and accepted the surrender as of November 16th. Moreover, the belated refusal to deliver the keys was not indicative of an intent by the Postal Service to retain possession of the premises because the stated reason the Postal Service refused to give the keys was that there was a bankruptcy proceedings which raised issues as to the rightful owner. Thus, the Postal Service was not claiming possession for itself, but only wanted to ensure that the keys were delivered to the rightful owner. Since possession had already been surrendered and the holdover tenancy terminated, the Board concluded that "the failure of [the Postal Service] to turn over the keys does not *in these circumstances* give rise to a holdover occupancy after [the Postal Service] had vacated the premises."

Here, in contrast, there was no notice, express or implied, of a contemporaneous intent to surrender possession after the Lease expired on November 30, 2000, and it cannot be reasonably disputed that the Postal Service's uncontested act of refusing to unconditionally return the keys to the landlord on December 26, 2000, was *inconsistent* with any contemporaneous intent to "yield up" the leasehold estate and effect a surrender. Brunswick, 451 S.W.2d at 422; Fishel,

463 N.Y.S.2d at 1009.

In sum, the record is wholly devoid of any evidence that the Postal Service gave any notice of its intent to surrender the Premises whatsoever, either express or implied, at any time between the November 30, 2000 termination of the Lease term, and the casualty on December 20, 2000. When, on December 26, 2000, the Postal Service affirmatively refused to turn over the keys, it unequivocally demonstrated its clear intent to retain possession and control of the Premises in complete derogation of any intent to "yield up" its interest in the leasehold estate. Therefore, the Postal Service continued to be a holdover tenant at will still in legal possession of the Premises as of the date of casualty on December 20, 2000, obligated to maintain the hot water boiler under the Lease, and liable for property damages caused by its admitted failure to do so.

**POINT II**

**PLAINTIFF'S INSURANCE POLICY IS NO DEFENSE TO THE GOVERNMENT'S LIABILITY FOR PROPERTY AND RESTORATION DAMAGES**

There is also no merit to the Postal Service's contention that North Slope Technical, Ltd. v. United States, 27 Fed.Cl. 425 (1992) stands for the proposition that a government contractor *may only* bring an action *"for the use and benefit of its insurer"*. Contrary to the Postal Service's contention, the case merely holds that a contractor *may* sue for the "use and benefit of its insurer", but there is absolutely *no requirement* that a contractor *must* so proceed ("the action *can* proceed in the name of [the contractor] for the use and benefit [of the insurer]"; "no general rule *prohibiting* the contractor from suing for the use and benefit of an insurer").

In fact, in Hughes Communications Galaxy, Inc. v. United States, 38 Fed. Cl. 578 (1997), affd. 271 F.3d 1060 (Fed. Cir. 2001), the Court Federal Claims expressly rejected the very same

argument the Postal Services raises here. The Hughes plaintiff, like the plaintiff here, filed suit against the Government *in its own name* and not for the use and benefit of its insurer or any third party who had occasion to reimburse the damages caused by the Government and claimed by the plaintiff in the lawsuit. The plaintiff moved, *in limine*, to preclude the Government from introducing evidence that third-parties had paid all or some of the damages the plaintiff sought to recover from the Government. The Government objected on the grounds that omission of such evidence would lead to a "double recovery". Citing North Slope, supra, the Hughes court flatly and unequivocally rejected the Government's objection.

The Hughes court held that, unless the Government paid for the insurance at issue, the Government, as the breaching party, has no right to exonerate itself or shift its loss. If the plaintiff thereby obtains a double recovery, it is a matter to be resolved between the third party and the plaintiff. The Hughes court stated, in relevant part, as follows:

> [I]t is clear that the breaching party [the Government] cannot benefit from . . . *de facto* insurance, and thus shift the loss to third parties (citing North Slope; other citations omitted). The breaching party is the wrongdoer and should not be able to take advantage of such arrangements by shifting [its liability owed to the plaintiff] to third parties. Whether the contracting party who suffers the breach is getting paid twice for its costs is a question best worked out between it and [the third party who made the second payment].

Id. at 581. There is simply no basis for the Government's contention that it should be *exonerated* from liability for its own wrongful conduct by reason of an insurance policy which it *neither paid for nor was named as a beneficiary of.* Had the Postal Service intended to be covered by insurance, it could have purchased its own policy, at its own expense, or bargained with the plaintiff to be named as an additional insured, also at its own expense. Having elected

not to do so, choosing instead to save the expense and assume the risk, the Postal Service simply cannot complain that it is liable to the plaintiff for property damages and breach of contract caused by its own negligent conduct.

**POINT III**

**THERE IS NO CONTRACT LANGUAGE REDUCING PLAINTIFF'S RECOVERY BY THE DEPRECIATED AMOUNT**

The Postal Service's reliance upon Container Co. v. United States, 116 Ct. Cl. 706 (1950) for the proposition that plaintiff's cost of repair damages should be reduced by the depreciated amount completely overlooks the recent, superceding, and controlling authority of WDC West Carthage Associates v. United States, 324 F.3d 1359 (Fed. Cir. 2003). Distinguishing Container, the WDC Court held that courts should look to the contract language to determine whether the Government is liable for the full cost of repair or may reduce its liability by the depreciated amount.

In this regard, we again point to Paragraph 30 of the Lease which expressly provides that the Postal Service will be responsible for *"the restoration of all damage or injury"* caused by its gross negligence; the language does not contain any set-off or reduction for depreciation:

> Commencing with the execution date of this Lease the *Tenant shall be responsible for the restoration of all damage or injury to the building or any other part of the premises which was caused by or resulted from any wanton or willful act which could be reasonably defined as gross negligence of the Tenant, Tenant's agents, employees, invitees or licensees* or which resulted from any work, labor, service or equipment done for or supplied to the Tenant that resulted in the improper, wanton or willful misuse of the premises which could be reasonably defined as gross negligence.

Exhibit A, ¶30 (emphasis added).

As in the case at bar, the Government in WDC did not and could not point to any contract language which would have justified reducing the Government's liability by the amount of depreciation. As stated by the Federal Circuit:

> [T]he government . . . has not pointed to any other lease provision that uses the term 'depreciation' or 'proration', and there was no evidenced presented to the Court of Federal Claims that the contract language 'the cost of such repairs' has a conventional and accepted meaning when used in a lease that requires deprecation. While the government contends that failure to account for depreciation results in an economic windfall to [landlord], it is not this court's duty to rewrite the terms of the leases agreed to by the parties because one of those terms benefits [the landlord], under circumstances caused entirely by the conduct of the government.

Id. at 1363.

The Postal Service has again failed to identify any language in the Lease which would justify reducing the its liability by the depreciated amount. Therefore, plaintiff is entitled to recover on its restoration claim the full cost of repairs. As calculated by GAB Robins without objection by the Postal Service, the cost of repair damages are $195,906.76 (Exhibits F and G). Judgment should thus be granted to plaintiff on the restoration claims (first and second causes of action) in this amount without reduction for depreciation, plus pre-judgment interest.

## POINT IV

## THE POSTAL SERVICE IS LIABLE FOR USE AND OCCUPATION FOR HOLDING OVER BEYOND THE STIPULATED LEASE TERMINATION DATE

The Government has not come forward with any facts showing that it gave notice of its intent to surrender its possessory interest in the leasehold estate, to wit: the alleged moving of property out of the Brightmoor Station in September, 1999 during the term of the Lease did not effect a surrender because there was no mutual agreement to do so; the December 2000

Settlement Agreement, although terminating the Lease term as of November 30, 2000 and creating a holdover tenancy at will, contains no notice, covenant or agreement that possession of the leasehold estate had been surrendered;[3] and on December 26, 2000, the Postal Service outright refused to deliver the keys when specifically and directly asked in person, which is clearly contrary to any intent to "yield up" its remaining possessory interest in the leasehold estate, dispelling any possibility that there had been a contemporaneous intent to surrender.

Therefore, the Postal Service has proffered no evidence whatsoever that the surrender of the leasehold estate occurred at any time other than January 18, 2001, as respectfully submitted by plaintiff (Pl's proposed findings of fact, ¶12; Postal Service's response, stating ". . . [the Postal Service] did not turn over to plaintiff the keys to the Premises until on or about January 18, 2001 . . ..")

Since the holdover period began on December 1, 2000 (the day after the Lease term expired on November 30, 2000) and the Postal Service did not effect a surrender until January 18, 2001, the Postal Service is additionally liable for two months rent and/or use and occupancy, as calculated based on the expired Lease agreement. See Modeer v. United States, 68 Fed. Cl. 131, 423-43 (2005) ("It is a well settled general principle of law that when a tenant holds over

---

[3] As previously discussed, the termination of a Lease term is not the legal equivalent to a surrender of possession. A surrender of possession requires separate notice. See e.g, Brunswick Corp. v. Goodie Investments, Inc., 451 S.W.2d 421 (Ky. Ct. App. 1970) (agreement to terminate lease term prior to natural expiration does not, of itself, effect a surrender of possession; surrender requires separate notice).

after the expiration of his lease with the express or implied consent of the landlord and without any new or different agreement as to rent, the terms of the old lease will apply.”); Yachts America Inc. v. United States, 673 F.2d 356, 365 (Ct. Cl. 1982) (“[O]ne who occupies the premises of another [has an] implied obligation to pay a reasonable rental therefor (citation omitted). Similarly, when a lessee holds over without new agreement after the expiration of his lease, the terms of the old lease agreement apply [citation omitted]”), cert. denied 459 U.S. 839, 103 S. Ct. 86, 74 L.Ed.2d 81 (1982).

The Postal Service does not contest plaintiff’s calculation of two month’s use and occupancy based on the rent due under the expired lease. Therefore, in addition to property and restoration damages, judgment should be awarded to plaintiff in the amount of $8,917, plus interest.

## CONCLUSION

By reason of the foregoing, summary judgment should be awarded to plaintiff as follows: (1) on the first and second causes of action, judgment in the amount $195,906.76, representing the full cost of repairs caused by the Postal Service's failure to maintain the hot water boiler or, at a minimum, $137,695.06, representing the full cost of repairs less depreciation of $58,211.70; (2) on the third cause of action for use and occupation, $8,917.00 representing rent and taxes for December, 2000 and January, 2001; and (3) denying the Postal Service's cross-motion for summary judgment; together with such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
May 3, 2007

ROSENBERG CALICA & BIRNEY LLP

By: ________/s/__________________________
Robert M. Calica
Robert J. Howard
*Attorneys for Plaintiff*
100 Garden City Plaza, Suite 408
Garden City, New York 11530
(516) 747-7400

G:\Spodek\ASSET LLC\Legal\Summary Judgment\MOL reply MSJ 041907.wpd

**CERTIFICATE OF SERVICE**

I, Betty M. Valentine, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of the **PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE POSTAL SERVICES'S CROSS-MOTION**, was made May 3, 2007 by

Mail service: Federal Express, priority overnight, fully pre-paid, addressed to:

TO: Michael Francis Kiely, Esq.
United States Postal Service - Law Department
475 L'Enfant Plaza, SW
Room 6523
Washington, DC 20260-1127

Under penalty of perjury, I declare that the foregoing is true and correct.

May 3, 2007 /s/
Date Signature

| | |
|---|---|
| Print Name | Betty M. Valentine<br>ROSENBERG CALICA & BIRNEY LLP |
| Business Address | 100 Garden City Plaza<br>Suite 408 |
| City State Zip | Garden City, New York 11530 |