IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ASSET 42302 LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 03-287C<br>(Judge Braden) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 7.1(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully submits its reply to plaintiff's opposition to defendant's cross-motion for summary judgment. In support of this reply, we rely upon the third amended complaint ("Am. Comp."), plaintiff's motion for summary judgment ("PMSJ"), plaintiff's proposed findings of uncontroverted fact ("PPF"), defendant's proposed revisions of certain of plaintiff's proposed findings of uncontroverted fact ("DPR"), defendant's proposed findings of uncontroverted fact ("DPF"), plaintiff's opposition to defendant's cross-motion for summary judgment ("Opp."), and the following brief.

In its opposition, plaintiff raises four arguments in opposition to defendant's cross-motion for summary judgment. First, plaintiff appears to be urging that defendant's argument that it was not a holdover tenant was an affirmative defense that should have been raised in defendant's answer to the third amended complaint, Opp. at 4-5; second, plaintiff argues that defendant has failed to raise a triable issue of fact with regard to its alleged status as a holdover tenant, *id.* at 7-18; third, that plaintiff may seek damages for its own account from the Government, notwithstanding the fact that it has received insurance proceeds for the loss, *id.* at 18-19; and,

fourth, that a recovery by plaintiff in this case should not be reduced to account for depreciation of the damaged property, *id.* at 20-21. We shall address these in order.

1. *Defendant's Argument That It Was Not A Holdover Tenant Is Not An Affirmative Defense*

RCFC 8(c) sets out a non-exclusive list of affirmative defenses which concludes with the residuary phrase "and any other matter constituting an avoidance or affirmative defense." This Court has recognized that, while there is generally a lack of definitive guidance as to what constitutes an affirmative defense, it is viewed as encompassing "two types of pleadings: ones that admit the allegations of the complaint but suggest some other reason why there is no right to recovery, and ones that concern allegations outside of the plaintiff's *prima facie* case that defendant therefore cannot raise by a simple denial in the answer." *Statham v. United States*, 2002 U.S. Claims LEXIS 264, at *31 (Fed. Cl. Sept. 11, 2002) (quoting 5 Wright and Miller, Federal Practice and Procedure, § 1271 at 444, 446 (2002 Supp.)). In determining what defenses other than those listed in Rule 8(c) must be pleaded affirmatively, a court should look to "considerations of policy, fairness," and to "whether plaintiff will be taken by surprise by the assertion . . . of a defense not pleaded affirmatively by the defendant. *Id.* (quoting 5 Wright and Miller § 1271 at 444, 446). *See also Bull v. United States*, 68 Fed. Cl. 212, 272 (2005).

The application of these principles to defendant's argument that it was not a holdover tenant shows that this argument is not an affirmative defense. First, defendant's argument in no way admits the allegations of the third amended complaint, while suggesting some other reason why plaintiff has no right to recovery. Rather it is a direct response to specific allegations in the third amended complaint. Paragraph 13 of the third amended complaint alleged that defendant

"remained in possession of the Premises beyond the termination of the lease on November 30, 2000, and did not surrender the premises until the middle of January 2001." Paragraph 32 of the third amended complaint further alleged that the "Postal Service held over, failed to surrender possession or the keys to the Premises by November 30, 2000 . . . and remained in possession until mid-January, 2001." Defendant's answer to the third amended complaint denied these allegations. Therefore, defendant's argument that it was not a holdover tenant is by no means an admission of plaintiff's allegations coupled with another reason why plaintiff has no right to recovery, but is instead a direct response to substance of the third amended complaint.

Likewise, defendant's holdover argument does not concern allegations outside of the plaintiff's *prima facie* case that defendant cannot address by a simple denial in the answer. Defendant's holdover argument concerns the very core of plaintiff's *prima facie* case and is an elaboration of the denials that were contained in defendant's answer. Moreover, since defendant expressly denied in its answer that it was a holdover tenant, plaintiff can not plausibly assert now that it has been surprised by the argument in defendant's cross-motion that, in fact, defendant was not a holdover tenant. For these reasons, therefore, defendant's holdover argument is not an affirmative defense that, pursuant to RCFC 8(c), needed to be raised in defendant's answer.

2. *At A Minimum, Defendant Has Raised A Triable Issue Of Fact With Regard To Its Alleged Status As A Holdover Tenant*

The bulk of plaintiff's opposition is concerned with the question whether defendant remained in possession of the premises following the December 2000 settlement agreement. Opp. at 4-18. This analysis, however, appears to misconstrue some of defendant's argument regarding holdover and appears to be confused regarding which facts are not in dispute.

Plaintiff argues that defendant's vacating the premises in September 1999 did not effect a surrender of the premises. Opp. at 7-8. Defendant does not dispute this. It is defendant's position that the removal of its equipment from the building in 1999 coupled with the December 2000 settlement agreement effected a surrender of the premises. But plaintiff appears to argue that the Postal Service, in addition to removing its equipment and executing the settlement agreement, was required to tender an additional notice of surrender to plaintiff. Opp. at 8-11. This argument, however, ignores the plain words of the December 2000 settlement agreement, which states that "By a copy of this agreement, the USPS is formally providing notification to Mr. Spodek that it is moving out of the Detroit, Michigan property on November 30, 2000."[1] What is unclear about that statement? What additional notice did plaintiff desire? In fact, the plaintiff's own actions refute its argument since a principal of the plaintiff traveled to Detroit, Michigan, less than two weeks after execution of the settlement agreement ostensibly to re-enter the premises. It is highly doubtful that plaintiff would have undertaken this trouble and expense if, as the plaintiff currently states, in December 2000 it was "the mutual intent of the parties . . . [to] leave the Postal Service in possession and control of the Premises subject to further notice of

---

[1] Plaintiff claims that, notwithstanding the clear language of the December 2000 settlement agreement regarding the Postal Service "moving out of the Detroit, Michigan property on November 30, 2000," the Postal Service had no intent to surrender the premises based upon defendant's response to Plaintiff's Proposed Finding of Uncontroverted Fact No. 6. In that response, defendant wrote that "the December 2000 Settlement Agreement was silent regarding how or when the Postal Service was to surrender possession of the Premises to the plaintiff." By that statement, which itself was not a proposed finding of fact, but was written in response to a proposed finding of uncontroverted fact regarding Mr. Nathanson's trip to Detroit, defendant merely intended to convey the fact that the settlement agreement contained no provisions on the methodology or timing for returning keys to the plaintiff. Defendant's own proposed finding of uncontroverted fact that is corollary to this statement is no. 2 ("The December 2000 Settlement Agreement did not contain any provision regarding how or when the Postal Service was to return to plaintiff the keys to the Premises.").

surrender awaiting what the Postal Service characterized as the 'forthcoming move.'" Opp. at 9 (emphasis omitted).

The crux of plaintiff's holdover argument, however, is unmistakably the issue regarding surrender of the keys, although that issue was barely alluded to in plaintiff's motion for summary judgment. In its opposition, plaintiff stresses that Mr. Nathanson traveled to Detroit to reenter the property and that defendant affirmatively refused to surrender to him keys to the property. Opp. at 13-18. Defendant has no basis to question that Mr. Nathanson traveled to Detroit for said purpose and defendant concedes that he did not receive said keys. See Defendant's Response To Plaintiff's Proposed Findings Of Uncontroverted Fact Nos. 5-6. However, defendant's admissions go no farther. While plaintiff repeatedly alleges that Mr. Nathanson went to Detroit to reclaim the keys and assume possession of the premises, nowhere does plaintiff allege that Mr. Nathanson – or anybody else from plaintiff – actually made arrangements with the post office to reclaim possession.[2] Plaintiff, for example, has not produced any correspondence that alerted the Postal Service to Mr. Nathanson's mission and advised that he would be reclaiming possession of the premises. Instead, we are left with the image of a stranger[3] arriving at the new post office on the day after Christmas without any advance notice to the post office of his purpose and expecting to receive from the Postal Service keys to a building that did not belong to the Postal

---

[2] At their depositions, both Mr. Nathanson and Mr. Spodek were questioned about their pre-visit contacts with the Postal Service, but their testimony was ambiguous. See Appendix To Defendant's Proposed Findings Of Uncontroverted Fact ("Def. App.") at 7-8, 18-19. See also Defendant's Proposed Finding Of Uncontroverted Fact No. 7.

[3] Prior to his December 2000 visit, Mr. Nathanson had never been to Detroit. Def. App. at 10, ll. 5-9.

Service.[4] Under such a scenario, it is a reasonable inference that the Postal Service's decision not to turn over keys to Mr. Nathanson was one born of caution and concern for proper procedures, rather than an affirmative refusal to relinquish possession of the premises. The Court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed. Cir. 1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed. Cir. 1984). In this case, defendant is opposing summary judgment on this issue and is entitled to such a favorable inference.

However, plaintiff's assertion that the Postal Service affirmatively refused to surrender the keys to the premises is contradicted by the testimony of plaintiff's own principal, J. Leonard Spodek. At his deposition in this matter, Mr. Spodek testified under oath that "as a result of all this damage, *we didn't accept the keys*." Def. App. at 19, ll. 21-22 (emphasis added). Plaintiff did accept the keys in mid-January 2001, which was after the parties entered into the superseding January 2001 settlement agreement on January 8, 2001.

At a minimum, there exists in this case an issue of material fact concerning whether the Postal Service refused to surrender to plaintiff the keys to the premises, whether plaintiff fumbled its attempt to reenter the premises and the Postal Service, out of caution, did not surrender the keys, or whether the plaintiff, anticipating litigation, refused to accept the keys.

---

[4] In its opposition, plaintiff asserts that "both sides agree that the very purpose of the December 26, 2000 meeting was to *accept the surrender* of the Premises." Opp. at 14. Defendant concedes that may have been Mr. Nathanson's subjective purpose, but there is no evidence that the local post office even knew in advance about the meeting, much less what the purpose of it was.

3. Defendant's Reliance Upon *North Slope Technical*

In its opposition, plaintiff attacks defendant's reliance upon *North Slope Technical v. United States*, 27 Fed. Cl. 425 (1992), for the proposition that the insured must prosecute such an action for the use and benefit of the insurer. Opp. at 18. In support of this argument, plaintiff cites *Hughes Communications Galaxy, Inc. v. United States*, 38 Fed. Cl. 578 (1997). In *Hughes*, there was no actual insurance policy involved. The Court held that, after the Government cancelled its contract with Hughes to launch satellites, Hughes could recover the difference between the cost of cover and the contract price with the Government without any offset for additional income that Hughes may have been able to generate for its satellite launches. *Hughes*, 38 Fed. Cl. at 581. The case did not concern an insurance policy and is of questionable importance for the present case.

4. Defendant's Reliance Upon *Container Co.*

In its opposition, plaintiff also attacks defendant for its reliance upon *Container Co. v. United States*, 116 Ct. Cl. 706, 720-21 (Ct. Cl. 1950) for the proposition that the damages for which defendant may be liable to plaintiff are to be measured by the reproduction cost of the destroyed part of the building less depreciation. Opp. at 20. In support of this, plaintiff cites the 2003 Federal Circuit decision in *WDC W. Carthage Assocs. v. United States*, 324 F.3d 1359 (2003), which required the Government to pay the full cost for the replacement of carpeting on an Army base. Our application of *WDC W. Carthage Assocs.*, however, is not as broad as plaintiff's. Of particular significance in distinguishing the cases is the fact that in *WDC W. Carthage Assocs.*, the Army initially agreed to pay the plaintiff the full cost of replacing worn-out carpets, but later changed its earlier interpretation of the contract. *WDC W. Carthage Assocs.*

324 F.3d at 1363. Thus, the parties' past conduct was crucial in the Federal Circuit's upholding Carthage Associates' interpretation of the subject contracts. In the present case, the parties had no prior experience regarding using depreciation for restoration that could help interpret the lease. Therefore, defendant believes that *WDC W. Carthage Assocs.* is of limited use in analyzing the present case.

## CONCLUSION

For the foregoing reasons, the Court should grant defendant's cross-motion for summary judgment. In the alternative, if the Court should hold that a genuine issue of material fact exists with respect to the surrender of the premises, then the Court should deny both parties' motions for summary judgment and set the matter for trial.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

THOMAS J. MARSHALL
Managing Counsel
Civil Practice Section
United States Postal Service

s/Michael Francis Kiely
MICHAEL FRANCIS KIELY
Civil Practice Section
Law Department
United States Postal Service
475 L'Enfant Plaza, S.W.
Room 6327
Washington, D.C. 20260-1127
(202) 268-4037

Date: May 25, 2007